# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Public Utility       :
Commission,                       :
                  Petitioner       :
                                  :
          v.                 :   No. 1560 C.D. 2019
                                  :
Eric Friedman,                 :
                  Respondent   :

Energy Transfer,               :
                  Petitioner       :
                                  :
          v.                 :   No. 1576 C.D. 2019
                                  :   Argued: June 23, 2022
Eric Friedman,                 :
                  Respondent   :

**BEFORE:**     **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                **HONORABLE STACY WALLACE,** Judge
                **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge

**OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**       **FILED: April 25, 2023**

In these consolidated petitions for review, the Pennsylvania Public Utility Commission (PUC) and Energy Transfer (together, Petitioners) seek review of the October 10, 2019 Final Determination of the Office of Open Records (OOR) granting in part and denying in part Eric Friedman's (Requester) appeal of the PUC's denial of Requester's Right-to-Know Law (RTKL)[1] request (Request). Relevantly, the PUC denied the Request, asserting the responsive records constituted or contained confidential security information (CSI) not disclosable under the Public Utility Confidential Security Information Disclosure Protection Act (CSI Act),[2] the

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.
[2] Act of November 29, 2006, P.L. 1435, 35 P.S. §§ 2141.1-2141.6.

Request was insufficiently specific and overly broad, and any responsive records were separately exempt from disclosure under Section 708(b)(2)-(3), (11), and (17) of the RTKL, 65 P.S. § 67.708(b)(2)-(3), (11), (17). The OOR reversed, concluding Petitioners had not established that the denied records contained or constituted CSI or that the claimed RTKL exceptions applied. Petitioners filed separate petitions for review, arguing the OOR lacked the authority to determine whether a record is properly designated as CSI and erred in finding that the requested records were not protected by the CSI Act or otherwise exempt under Section 708(b) of the RTKL.

During the pendency of this action, this Court decided *Pennsylvania Public Utility Commission v. Friedman*, 244 A.3d 515 (Pa. Cmwlth. 2020) (*Friedman I*), which involved Requester and a different request for Energy Transfer records from the PUC, the PUC's determination that those records were CSI and not subject to release, and the OOR's reversal based on the PUC not establishing that there was CSI in the records or that the records were CSI. In *Friedman I*, we held: the OOR had erred in determining that the requested records were not or did not contain CSI; the authority to administer the CSI Act rests with the PUC; and the OOR acted outside its authority when it determined that requested records were not CSI or did not contain CSI and, therefore, were subject to disclosure under the RTKL. *Id.* at 519-20. Unsurprisingly, Petitioners submitted briefs arguing that *Friedman I* required a reversal of the OOR Final Determination in this matter, and Requester responded that *Friedman I* was distinguishable.

Following this briefing, the parties agreed to stay resolution of this matter while our Supreme Court considered Requester's appeal of *Friedman I*.[3] The

---

[3] On July 29, 2021, the parties filed a joint status report advising the Court of the status of the *Friedman II* proceedings and requesting that oral argument be stayed pending resolution in that matter. The request in the joint status report is dismissed as moot.

Supreme Court rendered its decision affirming *Friedman I* in *Energy Transfer v. Friedman*, 265 A.3d 421 (Pa. 2021) (*Friedman II*), on December 22, 2021. The Supreme Court held that challenges to a request for CSI records or a public utility's designation of CSI must be presented to the PUC because the CSI Act expressly provides the PUC with exclusive jurisdiction over these issues. *Id.* at 431. On January 20, 2022, this Court ordered the parties to file supplemental briefs addressing *Friedman II* and heard oral argument on June 23, 2022.

## I. BACKGROUND

### A. *The Request*

Energy Transfer is the owner of Sunoco Pipeline LP (Sunoco Pipeline or Sunoco), which is a jurisdictional public utility, (Reproduced Record (R.R.) at 0012a, 0077a), and operates the Mariner East 1 Pipeline, a highly volatile liquid pipeline, *Friedman II*, 265 A.3d at 423. On June 9, 2019, Requester emailed the PUC's Open Records Officer, Secretary Rosemary Chiavetta (Secretary), the following:

> Under Pennsylvania's [RTKL], I respectfully request the following records of the . . . PUC[].
>
> 1. Any record(s) of the PUC that contain the names of "authorized [PUC] employees" as that term is used in 52 Pa. Code [§] 102.3(a)(3).[4]
>
> 2. All transmittal letters submitted to the PUC by Sunoco Pipeline, or any parent or subsidiary of Sunoco Pipeline, as the term "transmittal letter" is used in 52 Pa. Code [§] 102.3(b)(1).[5]

---

[4] In relevant part, Section 102.3(a)(3) of the PUC's regulations states: "Unless required by order or other directive from the [PUC] or its staff that records containing [CSI] shall be filed with the [PUC], public utilities shall do the following: . . . (3) Make the record containing [CSI] available for review upon request by authorized [PUC] employees." 52 Pa. Code § 102.3(a)(3).

[5] Section 102.3(b) of the PUC's regulations provides in its entirety:

3. All records that were submitted to the PUC along with the transmittal letters specified in [I]tem [No.] 2 above that fall in the category of "Records that are public in nature and subject to the [RTKL]," in accordance with 52 Pa. Code [§] 102.3(b)(2)(i).

(R.R. at 0009a.[6])

After invoking the 30-day extension period set forth in Section 902(b) of the RTKL, 65 P.S. § 67.902(b), the PUC denied the Request in its entirety by letter dated July 16, 2019. (R.R. at 0010a-0014a.[7]) Regarding Item No. 1, the PUC explained it does not maintain a record of employees authorized to review CSI, and no responsive record exists which could satisfy the Request. (*Id*. at 0012a.) The PUC denied the Request as being insufficiently specific and overbroad. The PUC also

---

(b) *Filing requirements.* When a public utility is required to submit a record that contains [CSI] to the [PUC], the public utility shall do the following:

(1) Clearly state in its transmittal letter to the [PUC] that the record contains [CSI] and explain why the information should be treated as confidential. The transmittal letter will be treated as a public record and may not contain any [CSI].

(2) Separate the information being filed into at least two categories:

(i) Records that are public in nature and subject to the [RTKL].

(ii) Records that are to be treated as containing [CSI] and not subject to the [RTKL].

(3) Stamp or label each page of the record containing [CSI] with the words "Confidential Security Information" and place all pages labeled as containing [CSI] in a separate envelope marked "Confidential Security Information."

(4) Redact the portion of the record that contains [CSI] for purposes of including the redacted version of the record in the public file.

52 Pa. Code § 102.3(b).

[6] The Request is found in Item No. 1 of the Certified Record.
[7] The PUC's denial is found in Item No. 1 of the Certified Record.

4

explained the records were exempt from disclosure pursuant to: (1) the noncriminal investigation exception of the RTKL, 65 P.S. § 67.708(b)(17)[8]; (2) the infrastructure security exception within the RTKL, which protects the release of records that could endanger public utility facilities, 65 P.S. § 67.708(b)(3)[9]; and/or (3) the CSI Act. (R.R. at 0013a.)

---

[8] The noncriminal investigation exception provision, Section 708(b)(17) of the RTKL, states in relevant part:

> The following are exempt from access by a requester under this act:
> . . . .
> A record of an agency relating to a noncriminal investigation, including:
>
> (i) Complaints submitted to an agency.
>
> (ii) Investigative materials, notes, correspondence and reports.
>
> (iii) A record that includes the identity of a confidential source, including individuals subject to the act . . . known as the Whistleblower Law[, Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§ 1421-1428].
>
> (iv) A record that includes information made confidential by law.
>
> (v) Work papers underlying an audit.
>
> (vi) A record that, if disclosed, would do any of the following:
>
> > (A) Reveal the institution, progress or result of an agency investigation, except the imposition of a fine or civil penalty, the suspension, modification or revocation of a license, permit, registration, certification or similar authorization issued by an agency or an executed settlement agreement unless the agreement is determined to be confidential by a court.
> . . . .

65 P.S. § 67.708(b)(17).

[9] The infrastructure security exception states: "[t]he following are exempt from access by a requester under this act:" "[a] record, the disclosure of which creates a reasonable likelihood of endangering the safety or the physical security of a building, public utility, resource, infrastructure, facility or information storage system[.]" 65 P.S. § 67.708(b)(3).

*B. Appeal to OOR*

Requester appealed to the OOR on August 6, 2019. Energy Transfer was permitted to participate, and both it and the PUC filed Position Statements and supporting affidavits, asserting essentially the same position as the PUC's July 16, 2019 letter denying Requester's request. Specific to it, Energy Transfer raised the trade secrets and confidential proprietary information exception of the RTKL, 65 P.S. § 67.708(b)(11).[10] The PUC also asserted that the public safety exception, 65 P.S. § 67.708(b)(2),[11] applied and any challenges to the designation of documents submitted to the PUC as CSI must be raised with the PUC, and "not the OOR, which has no authority over the issue." (R.R. at 0088a, 0090a.[12])

Several affidavits were offered in support of Petitioners' positions before the OOR. The PUC submitted the affidavit of Secretary, in which Secretary stated that the PUC's Bureau of Investigation and Enforcement (BIE) "ha[d] initiated numerous noncriminal investigations against Sunoco Pipeline, L.P. a/k/a Energy Transfer" and the PUC did "not have any responsive records other than those that are part of these [BIE] investigations." (*Id.* at 0095a.) Secretary also stated that Requester "has not challenged Sunoco Pipeline[]'s designation of [CSI] pursuant to Chapter 102 of the [PUC's] regulations[,]" which, in part, sets forth the procedures for challenging a

---

[10] The trade secrets or confidential proprietary information exception states: "[t]he following are exempt from access by a requester under this act:" "[a] record that constitutes or reveals a trade secret or confidential proprietary information." 65 P.S. § 67.708(b)(11).

[11] The public safety exception states: "[t]he following are exempt from access by a requester under this act:" "[a] record maintained by an agency in connection with the military, homeland security, national defense, law enforcement or other public safety activity that, if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity[.]" 65 P.S. § 67.708(b)(2).

[12] The PUC's responses to Requester's appeal and affidavits in support thereof are found at Item No. 9 in the Certified Record.

confidentiality designation. (*Id.*) The PUC also offered the affidavit of Paul J. Metro, Manager of BIE's Safety Division (Metro). (*Id.* at 0102a-03a.) Metro stated:

3) [BIE] is and has been, for more than five years, engaged in multiple noncriminal investigations of Sunoco Pipeline and affiliated companies.

4) To the best of my knowledge, in the last two years, [BIE] has received from Sunoco Pipeline hundreds of transmittal letters with thousands of attached documents.[13] Every document submitted by Sunoco Pipeline that contains confidential material – including CSI – must be identified through and attached to a transmittal letter. Sunoco Pipeline's transmittal letters have multiple documents attached in many cases.

5) [BIE] does not have any requested records other than records that are part of a noncriminal investigation.

6) Many of the numerous records submitted to [BIE] under Sunoco Pipeline's transmittal letters contain "[CSI]" within the meaning of the [CSI Act] . . . . In my professional opinion, release of records marked as CSI would compromise security against sabotage or criminal or terroristic acts . . . .

7) To access and review all of the documents requested by [Requester] would be unduly burdensome on [BIE] staff.

(*Id.*)

Energy Transfer submitted a declaration by Todd Nardozzi, Senior Manager of Energy Transfer's Department of Transportation Compliance (Nardozzi), in support of Energy Transfer's positions (verified statement). (*Id.* at 0077a-0081a.[14]) Nardozzi indicated Energy Transfer submitted documents for a variety of reasons

---

[13] Metro noted that, "[g]iven the number of documents at issue and the extremely constricted timeframe for responding to a [RTKL] appeal, [BIE] has not had sufficient time to confirm the exact number of documents." (R.R. at 0102a n.1.)

[14] Energy Transfer's response to Requester's appeal and the verified statement are found at Item No. 7 of the Certified Record.

7

and stated that part of his job is to ensure the protection and safety of Energy Transfer assets, including records and other documents, and that he has "knowledge of records submitted to the [PUC] and possibly implicated by the June 9, 2019 request" for Item Nos. 2 and 3. (*Id.* at 0077a.) Nardozzi explained that "[s]ince 2008, [Energy Transfer] has submitted substantial information regarding the operation, location, and vulnerabilities of [Energy Transfer]'s pipeline, which it treats as [CSI] in accordance with the" CSI Act. (*Id*. at 0078a.) Nardozzi also stated Energy Transfer "consistently provide[s] the PUC with valuable trade secret information . . . which may be implicated by such requests" and Energy Transfer "treats its proprietary and trade secret information as confidential and takes substantial steps to guard its secrecy. . . ." (*Id*. at 0079a.)

On October 10, 2019, the OOR issued its Final Determination.[15] Regarding Item No. 1, which sought records relating to PUC employees referenced in Section 102.3(a) of the regulations, the OOR found the PUC had met its burden of proving that responsive records do not exist. (Final Determination at 6-7.) Regarding Item Nos. 2 and 3, the OOR found the Request to be sufficiently specific and not overbroad. The OOR also found Petitioners had not proven that the requested records were considered or contained CSI, which would preclude their disclosure, or the applicability of the cited Section 708(b) exceptions to disclosure.

As to the transmittal letters requested in Item No. 2, the OOR held "[f]or a record to be designated as non[]disclosable CSI under the [CSI] Act, [Energy Transfer/Sunoco Pipeline] and the [PUC] must comply with the '[p]rocedures for submitting . . . and protecting [CSI]' set forth in [Section] []3 [of the CSI Act] and

---

[15] The OOR's Final Determination can be located in the Certified Record at Item No. 17, and in the Reproduced Record at pages 0128a-58a.

8

52 Pa. Code § 102.3(b)(1), as a condition precedent for nondisclosure." (*Id.* at 16.) The OOR stated that

> [t]he regulations implementing the CSI designation procedures of the [CSI] Act clearly state that a transmittal letter "may not contain any [CSI]." 52 Pa. Code § 102.3(b). In addition, the same regulation, which implements Section []3(a) of the [CSI] Act, provides that the public utility "must clearly state in its transmittal letter, upon submission to an agency, that the record contains [CSI] and explain why the information should be treated as such"; most importantly, it expressly states that "**the transmittal letter will be treated as a public record**." 52 Pa. Code § 102.3(b). . . .
>
> . . . .
>
> . . . Section []3 of the [CSI] Act makes clear that the [PUC] shall instruct public utilities that materials submitted are to be segregated in[to] two categories – one of which is "**subject to** the provisions of the [RTKL]" and one which is not. In contrast to the [CSI] Act, the protocols and procedures developed by the [PUC] for the submission of confidential documents, including CSI, include express language stating that "**[t]he transmittal letter will be treated as a public record**" without the limiting language ["]and subject to the RTKL.["] 52 Pa. Code § 102.3(b)(1) (emphasis added). Whereas[] the subsection addressing the documents to be submitted as attachments to transmittal letters distinguishes between "[r]ecords that are public in **nature** and **subject to** the [RTKL]" and "records that are to be treated as containing [CSI] and **not subject to** the [RTKL]." 52 Pa. Code § 102.3(b)(2)(i)-(ii) (emphasis added).

(*Id*. at 16-18 (emphasis in original).)

Concerning Item No. 3, requesting records submitted with the transmittal letters that would be records that are public in nature and subject to the RTKL, the OOR explained "Section []3 of the [CSI] Act contemplates that the records attached to a transmittal letter may include public, as well as confidential information and places the onus on the [PUC] to instruct public utilities '[that] submit records to an agency to separate their information into at least two categories[,]'" one public and

9

subject to the RTKL, and one confidential and not subject thereto. (*Id*. at 20.) The OOR noted that Requester expressly limited his request in Item No. 3 "to '[r]ecords public in nature and subject to the [RTKL],'" and "[b]ased on a plain reading of [52 Pa. Code § 102.3(b)], the records requested would not include non[]disclosable material because," in order for that material to be non[]disclosable, "[Energy Transfer/Sunoco Pipeline] would have had to submit the records segregated into 'public' and 'non-public' categories, with the confidential material marked as CSI and placed in a separate envelope." (*Id*. at 21 (first and second alterations in original).) The OOR rejected the argument that inadvertent or erroneous inclusion of CSI within a transmittal letter would prohibit the PUC from disclosing such information. The OOR explained "neither party has identified responsive records or presented nonconclusory evidence that any responsive transmittal letters[,] records[,] or attachments contain CSI, for which an argument for redaction may [be] possibl[e] . . . under [Section 3(e) of the CSI Act,] 35 P.S. § 2141.3(e)." (*Id.* at 22.) Thus, the OOR rejected Metro's affidavit and Nardozzi's verified statement as being insufficient to establish that all responsive records constituted protected CSI under the CSI Act. (*Id*. at 20-22.)

The OOR also found Petitioners' challenge to the OOR's jurisdiction to review and determine the designation of CSI in submissions by public utilities to be without merit. The OOR explained

> the [CSI] Act and the regulations specifically mandate that certain records are public and/or subject to [the] RTKL. Accordingly, in this adjudication, the OOR is not determining the propriety of a CSI designation; rather, we are analyzing applicability of the RTKL to the records requested, which are subject to the RTKL.

(*Id*. at 22-23.)

10

Next, the OOR addressed Petitioners' RTKL exception arguments. Upon its review, the OOR held Petitioners did not demonstrate that records attached to the transmittal letters were exempt pursuant to Section 708(b)(2)-(3), (11), and (17). Regarding Section 708(b)(2) and (3), the public safety and infrastructure exceptions, the OOR explained that although Metro and Nardozzi attested the records "contained CSI and other security-sensitive information, [the PUC] has not identified any responsive records." (*Id*. at 25.) Comparing the Request here to the request made in *Friedman I* and *II*, the OOR noted the request there sought "'calculations or estimates of **blast radius** . . . **regarding accidents or releases from** [highly volatile liquid (]**HVL**[)] **pipelines**,' a particularly described record to which the [PUC's] evidence regarding risk of public safety or security of a public utility could be attributed" and "here, no [such] records have been identified at all." (*Id*. (emphasis in original).) As a result, the OOR held

> [b]ecause the [PUC] has not identified the responsive transmittal letters and publicly designated documents attached to them, the conclusory and speculative statements made regarding the risk of harm in the release of all potential responsive records do not support the [PUC's] and [Energy Transfer/Sunoco Pipeline]'s position that the disclosure of the public portions of Item 3 would jeopardize public safety or the security of a public utility.

(*Id*.)

As to the trade secrets exception pursuant to Section 708(b)(11), the OOR found that no responsive records had been identified and "Nardozzi's declarations are merely conclusory and speculative and fail to demonstrate that implicated records, in fact, contain confidential proprietary or trademarked information." (*Id*. at 29.) Regarding the noncriminal investigation exception set forth in Section 708(b)(17), the OOR explained that while Metro and Secretary attested to multiple

11

ongoing investigations of Energy Transfer by BIE, the PUC had "not identified any individual investigation by number or general description. As a result, the [PUC] has not shown that the requested records relate to noncriminal investigations conducted by" the PUC. (*Id*. at 27.)

Petitioners each filed petitions for review of the OOR's Final Determination, which were consolidated.[16] After briefing and oral argument, this matter is now ready for disposition.

## II. DISCUSSION

While Petitioners' filings appear to suggest that all the responsive records either were CSI or contained CSI, Petitioners conceded at oral argument that there are two distinct groups of records – those which are CSI or contain CSI, or are alleged to do so (CSI Records), and those which are not CSI or do not contain CSI (Non-CSI Records). We will initially address the first group of records – CSI Records.

### A. *CSI Records*

Petitioners first challenge, pursuant to *Friedman I* and *II*, the OOR's authority to determine whether a record is properly designated as CSI or as containing CSI and argue the OOR erred in finding Petitioners did not establish that the requested records were protected by the CSI Act. Petitioners assert *Friedman I* and *II* made clear that the CSI Act placed exclusive authority to hear challenges to the designation

---

[16] This Court exercises a *de novo* standard of review and a plenary scope of review of OOR determinations. *Bowling v. Off. of Open Recs.*, 75 A.3d 453, 472 (Pa. 2013). *De novo* review permits the court to determine the case anew, including matters pertaining to testimony and other evidence. *Id.* at 466 n.14 (citing *Commonwealth v. Emerick*, 96 A.2d 370, 373-74 (Pa. 1953)). Accordingly, this Court may consider facts and legal arguments not brought before the OOR when deciding petitions for review of OOR decisions. *Id.* at 475-77.

of a record as CSI or as containing CSI in the agency to which the records were submitted, in this case the PUC. Requester argues the OOR did not exceed its authority because it did not administer the CSI Act in its Final Determination, but simply ordered the release of **non-CSI** records, which are subject to the RTKL, making *Friedman I* and *II* distinguishable. Requester asserts *Friedman I* and *II* are further distinguishable because, unlike those in that case, the affidavits of Secretary and Metro, and verified statement of Nardozzi, did not establish that the responsive records contained or constituted CSI.

As these arguments reflect, this case involves the interplay between the CSI Act and the RTKL. Thus, an overview of the law concerning the CSI Act and the RTKL, as well as *Friedman I* and *II*, is necessary to resolving whether the OOR exceeded its authority in its Final Determination.

### 1. Relevant Statutory Provisions

The RTKL was implemented as "remedial legislation to facilitate government transparency and accountability," and the RTKL is "construed to maximize access to public records" in an agency's possession. *McKelvey v. Pa. Dep't of Health*, 255 A.3d 385, 399-400 (Pa. 2021). The RTKL was also implemented "[t]o 'prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions,' [and] the RTKL places the statutory duty of disclosing public records 'solely on the government agency.'" *Friedman II*, 265 A.3d at 428-29 (quoting *McKelvey*, 255 A.3d at 400). The RTKL mandates that a Commonwealth agency or a local agency "shall provide public records in accordance with" the RTKL without regard to a requester's "intended use of the public record . . . unless otherwise provided by law." Sections 301 and 302 of the RTKL, 65 P.S. §§ 67.301, 67.302. A record in the possession of a Commonwealth

13

agency or local agency "shall be presumed to be a public record." Section 305(a) of the RTKL, 65 P.S. § 67.305(a). Relevantly, the RTKL defines "public record" as "a record . . . of a Commonwealth agency or local agency that . . . is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree." Section 102(2) of the RTKL, 65 P.S. § 67.102(2). The RTKL establishes the OOR to

> review[] record requests and denials of record requests through the lens of the RTKL. In defining "public record" in the RTKL, however, the General Assembly anticipated the OOR's interpretation of other laws. *Cf.* [*Dep't of Lab. & Indus. v.*] *Heltzel*, 90 A.3d [823,] 828 [(Pa. Cmwlth. 2014)] . . . . The RTKL contains two caveats related to how other laws impact its presumption that a record is public and, therefore, subject to public disclosure. These caveats concern the nature of a record and the accessibility of a record, which are distinct concepts. *Id.* at 831 . . . .
>
> According to the first caveat, nothing in the RTKL "shall supersede or modify the public or nonpublic nature of a record or document established in Federal or State law, regulation or judicial order or decree." [Section 306 of the RTKL,] 65 P.S. § 67.306. Thus, where a federal or state law establishes a record as public, the record is not subject to a public record analysis under the RTKL. "Given this significant consequence, a statute should be clear when it establishes the public nature of records." *Heltzel*, 90 A.3d at 832. According to the second caveat, if the provisions of the RTKL "regarding access to records conflict with any other Federal or State law, the provisions of [the RTKL] shall not apply." [Section 3101.1 of the RTKL, 65 P.S.] § 67.3101.1. **Thus, where a federal or state law prescribes certain procedures to access records in a manner that conflicts with the RTKL, the provisions of the other law prevail**.

*Friedman II*, 265 A.3d at 429-30 (emphasis added).

The CSI Act was enacted "to create mechanisms for the safeguarding of [CSI] of public utilities that is provided to various state agencies, such as the [PUC], from disclosure that may compromise security against sabotage or criminal or terrorist

14

acts." *Id.* at 430 (quoting *Designation of Qualified Documents for Elec. Filing, L-00070187*, 2008 WL 5582647, at \*2 (Pa. PUC Nov. 19, 2008)). The CSI Act defines CSI as "[i]nformation contained within a record maintained by an agency in any form, the disclosure of which would compromise security against sabotage or criminal or terrorist acts and the nondisclosure of which is necessary for the protection of life, safety, public property or public utility facilities . . . ." Section 2 of the CSI Act, 35 P.S. § 2141.2. Regarding procedures for submitting, challenging, and protecting CSI,[17] Section 3(a)-(c) of the CSI Act states:

> **(a) General Rule.**--The public utility is responsible for determining whether a record or portion thereof contains [CSI]. When a public utility identifies a record as containing [CSI], it must clearly state in its transmittal letter, upon submission to an agency, that the record contains [CSI] and explain why the information should be treated as such.
>
> **(b) Submission of [CSI].**--An agency shall develop filing protocols and procedures for public utilities to follow when submitting records, including protocols and procedures for submitting records containing [CSI]. Such protocols and procedures shall instruct public utilities [that] submit records to an agency to separate their information into at least two categories:
>
>> **(1) Public.--**Records or portions thereof subject to the provisions of the . . . [RTKL].
>>
>> **(2) Confidential.--**Records or portions thereof requested to be treated as containing [CSI] and not subject to the [RTKL].
>
> **(c) Challenges to designation of [CSI].--**Challenges to a public utility's designation or request to examine records containing [CSI] by a member of the public shall be made in writing to the agency in which

---

[17] "[T]he procedure set forth in the CSI Act pursuant to which a member of the public may challenge a designation of CSI first to the PUC and then to the Commonwealth Court or request in writing to examine CSI" is embodied in the Pennsylvania Code, 52 Pa. Code § 102.4(a)(1), (2)(i)-(v). *Friedman II*, 265 A.3d at 426 n.4.

the record or portions thereof were originally submitted. The agency shall develop protocols and procedures to address challenges to the designations or requests to examine records [CSI] . . . .

35 P.S. § 2141.3(a)-(c).

### 2. *Friedman I* and *Friedman II*

Shortly after the petitions for review were filed in this matter, this Court issued *Friedman I*. In that case, Requester submitted a request to the PUC under the RTKL for records transmitted to the PUC by Energy Transfer which had not been designated as CSI.[18] *Friedman II*, 265 A.32 at 424. As here, after the PUC denied the request in its entirety because the responsive records had been designated as CSI, Requester appealed the PUC's denial with the OOR. The OOR held that the PUC had not proven that the requested records were CSI and, therefore, directed their disclosure.

Petitioners appealed to this Court, making essentially the same arguments as they make here – any challenges to a designation of a record as CSI under the CSI Act must be made before the agency originally receiving the record and the responsive records were exempt from disclosure pursuant to RTKL exceptions.

---

[18] The request in *Friedman I* and *Friedman II* sought

> all records in the possession of [] Metro, his superiors or subordinates, that relate to the calculation or estimation of the range at which thermal or overpressure events related to accidents on hazardous, highly volatile liquid (HVL) pipelines may be experienced. This request does not seek information provided by Sunoco if that information has been designated as [CSI]. Rather, it seeks records containing or relating to calculations or estimates of blast radius (Sunoco's term) or "buffer zone" (PUC's term) regarding accidents or releases from HVL pipelines in the possession of the PUC, including (but not limited to) information that was produced for [the] PUC by an external source or that was developed internally.

*Friedman II*, 265 A.3d at 424 (quotation and citation omitted).

16

Petitioners argued that the OOR erred in finding that the records requested were not protected from disclosure pursuant to the CSI Act. We agreed, explaining that, under the plain language of the CSI Act, the "OOR does not administer the CSI Act and is not directed by the statute to oversee the determination of whether requested information qualifies as CSI." *Friedman I*, 244 A.2d at 519-20. Instead, we concluded, "the administration of the CSI Act rests with the PUC," and the OOR acted outside its authority by determining that the requested information was not CSI. *Id*. at 520. This Court did not reach whether the records were exempt under the RTKL because **all** the responsive records involved were CSI. Requester appealed to the Supreme Court, which affirmed in *Friedman II*.

In *Friedman II*, our Supreme Court described the issue before it as "whether the OOR had any statutory authority to identify and release to the public records that a public utility has submitted to the PUC with a designation of CSI." 265 A.3d at 428. In resolving this issue, the Supreme Court recognized that the RTKL and the CSI Act "overlap[ped] in the areas of designating and disclosing a record[, and b]oth statutes include procedures for requesting a record in possession of an agency and for challenging the denial of a record request." *Id*. However, "[t]hey diverge . . . with respect to **identifying the nature of, and providing access to**, **records containing CSI**." *Id*. (emphasis added). Concerning the proper administrative body authorized to enforce the CSI Act, the Supreme Court explained

> [w]hereas the OOR enforces the RTKL, the CSI Act identifies as the administrative body authorized to consider and review a public utility's submission of CSI, "the agency in which the record or portions thereof were originally submitted," and having "protocols and procedures to address [filing CSI-designated records and] challenges to the designations or requests to examine records" containing CSI. 35 [P.S.] § 2141.3(b), (c)(1)-(4).[] As with the RTKL, the CSI Act also addresses the impact of other laws. Specifically, public utility "records or

17

portions thereof which contain [CSI], in accordance with the provisions of this act, shall not be subject to the provisions of the [RTKL]." [Section 4 of the CSI Act,] 35 P.S. § 2141.4.

*Friedman II*, 265 A.3d at 430-31 (first, third, and sixth alterations added) (footnote omitted). As to which entity has jurisdiction regarding determinations of what material constitutes CSI, the Supreme Court held

[u]pon review of the purposes and provisions of the RTKL and the CSI Act, we conclude that reconciling the two statutes weighs in favor of the **PUC having exclusive jurisdiction with regard to CSI**. Evidence of this primacy is found foremost in the plain language of the competing statutes with respect to three topics: the type of information protected from disclosure, the applicability of other laws, and specific procedures for submitting CSI-designated records and challenging a CSI designation or request for records containing CSI.

*Id*. at 431 (emphasis added). Regarding the disclosure of CSI and the General Assembly's intent, the Supreme Court explained

[b]ecause the disclosure of a public utility's CSI-records could present a significant risk to public safety, we conclude that the General Assembly intended to provide a unique vehicle in the CSI Act for protecting CSI from disclosure. **To that end, it removed CSI from the domain of the OOR under the RTKL and placed it squarely in the hands of public utilities and qualified agencies under the CSI Act. In other words, where CSI-designated records are at issue, the General Assembly intended the specific provisions of the CSI Act to prevail over the general provisions of the RTKL**.

*Id*. (emphasis added).

In response to Requester's belief that "Energy Transfer's **procedural blunder** with respect to its transmittal letters was fatal to its designation of the records as CSI and, therefore, to protection under the CSI Act" and characterization of the central issue as being "whether the OOR had the authority to determine if Energy Transfer

18

complied with the CSI Act's **procedures** for designating records as CSI," *Friedman II*, 265 A.3d at 426, 432 (emphasis added), the Supreme Court focused on which entity, the PUC or the OOR, has the requisite authority to administer the CSI Act, both substantively and procedurally. The Supreme Court concluded

> [t]he PUC is . . . the administrative body that oversees public utilities in Pennsylvania, the PUC receives records from public utilities and has developed protocols and procedures for the filing of a CSI record, the maintenance of CSI records, and challenges to CSI-designations and requests to examine CSI records. 35 P.S. §§ 2141.2 & [2141].3; 52 Pa. Code §§ 102.3 & [102].4. Such challenges include claims that a public utility failed to comply with the filing requirements of the CSI Act. **In such cases, the PUC has express authority**, and the expertise, **to determine if a public utility record has been properly designated, both substantively and procedurally**, and to afford a public utility with the opportunity to resubmit a record that was improperly, defectively, or not designated as CSI. 52 Pa. Code § 102.3(d)-(f). **Thus, determining the consequences of failing to comply with the CSI Act or PUC regulations is also an express function of the PUC, not the OOR**.

> Based on our interpretation of the RTKL and the CSI Act, we conclude the General Assembly intended for **the RTKL to yield to the CSI Act in** the dual areas of **designating and accessing CSI**. In short, a CSI-record is not a "public record" under the RTKL and, therefore, is not subject to disclosure through a RTKL request. . . .

> . . . .

> . . . [T]he OOR had authority to interpret the CSI Act as to the public nature of Energy Transfer's CSI, but it was not in a position to enforce the CSI Act's procedures for public access to CSI. **Although Friedman specifically requested non-CSI records** from the PUC through the RTKL, **the PUC determined, as it was authorized to do, that Energy Transfer had designated records** responsive to Friedman's request **as containing CSI**. **That designation and determination triggered the protections of the CSI Act, including the procedure for challenging a CSI-designation or the denial of a request for records that contain CSI in the PUC**. The **OOR** had only to consider the definition of "public record" in the RTKL to realize that

19

CSI-designated records fall outside its bailiwick and that it **lacked authority to apply the substantive or procedural provisions of the CSI Act** or to conclude that records designated by Energy Transfer as CSI and accepted by the PUC as CSI were, in fact, public and accessible.

*Id*. at 432-33 (emphasis added). Based on this reasoning, the Supreme Court affirmed *Friedman I*, agreeing the OOR lacked the authority to consider the nature of CSI-designated records or the public accessibility of those records. The Supreme Court explained that "[u]pon receipt of CSI-designated records and supporting affidavits [from the PUC], the OOR should have yielded jurisdiction of [Requester's] request to the PUC." *Id*. at 434.

### 3. Analysis

Petitioners maintain the OOR has no authority to determine whether a record is properly designated as CSI pursuant to the CSI Act, and, pursuant to Section 3 of the CSI Act, challenges to transmittal letters that are averred to contain CSI or records submitted along with transmittal letters that are designated as CSI or contain CSI must be brought to the PUC, not the OOR. Petitioners assert review of a PUC decision regarding a challenge to a CSI designation then lay with this Court, not the OOR, pursuant to Section 3(c)(6) of the CSI Act.[19] Petitioners maintain the affidavits were sufficient to support that this matter involves designations under the

---

[19] Section 3(c)(6) of the CSI Act states:

Following written notification by the agency of its decision on confidentiality, the public utility and member of the public shall be given 30 days to file an appeal in Commonwealth Court where the court may review the records containing [CSI] in camera to determine if they are protected from disclosure under this act. During pendency of the in camera review, the records subject to the in camera review shall not be made part of the public court filing.

35 P.S. § 2141.3(c)(6).

CSI Act, which removes the matter from the OOR's consideration. According to Petitioners, *Friedman II* unequivocally establishes that the proper forum for challenging any CSI designation, both procedurally (whether the public utility followed the procedures necessary for the information to be protected under the CSI Act) and substantively (whether the information is actually CSI), is with the PUC, not the OOR. Petitioners argue the Supreme Court made clear in *Friedman II* that the OOR may not review a utility's and agency's compliance with the CSI Act's procedures as a condition precedent to a record being subject to the CSI Act's protections.

Requester argues this case deals with a request made for records that were not CSI records; thus, *Friedman I* and *II* are inapplicable. Requester draws the Court's attention to Item No. 2 of the Request, explaining he is requesting **public records**, as expressly defined by Section 102.3(b)(1) of the PUC's own regulations, 52 Pa. Code § 102.3(b)(1), because Petitioners did not submit any evidence showing that the requested transmittal letters were either designated as CSI or contained material designated as CSI. (Requester's Suppl. Br. at 3-4.) He similarly asserts, as to Item No. 3, that he sought only records **not** designated CSI and, therefore, those records were subject to disclosure due to the non-designation of those records. Requester argues that, unlike *Friedman II*, there is no affidavit here asserting that Energy Transfer made the "procedural blunder" of improperly marking requested transmittal letters as CSI. (*Id*. at 4.) Rather, Requester asserts Petitioners produced **no** evidence or affidavit reflecting that Energy Transfer made **any** procedural error in indicating whether a responsive record is or contains CSI. Requester argues *Friedman II* affords public utilities protection under the CSI Act where they commit a "procedural blunder" of improperly marking a public record **as CSI**, but this

21

protection only applies when the utility actually commits a designation error. Requester contends the affidavits and verified statement fail to support Petitioners' position that the records responsive to the Request constitute or contain CSI and amount to nothing more than conclusory evidence.

Regarding the CSI Records, a review of the OOR's Final Determination here reflects the OOR made the same errors reversed in *Friedman I* and *II*. The OOR made an express determination that, in order for a record to be nondisclosable CSI, Petitioners were required to comply with the procedures for submitting and protecting CSI "as a **condition precedent**" for preventing their disclosure under the CSI Act. (Final Determination at 16 (emphasis added).) However, *Friedman II* rejected a similar procedural argument by Requester, which was the CSI Act did not protect the transmittal letters because the request was for records that were not CSI records and transmittal letters are not to contain CSI, reasoning Requester's argument was based on the OOR's finding that the CSI Act's procedural requirements had not been met. 265 A.3d at 433.

As the Supreme Court explained, "the PUC has express authority, and the expertise, to determine if a public utility record has been properly designated**, both substantively and procedurally**, and to afford a public utility with the opportunity to resubmit a record that was improperly, defectively, **or not designated as CSI**." *Id.* at 432 (emphasis added). Determining the consequences of a public utility's failure to comply with PUC regulations or the CSI Act regarding the submission of documents "is [] an express function of the PUC, **not the OOR**." *Id.* at 433 (emphasis added). Regardless of the protocols and procedures developed by the PUC providing that transmittal letters should not contain CSI, the PUC, upon its review, determined that at least some of the responsive records here **did** include

22

nondisclosable CSI. Pursuant to *Friedman II*, once the PUC made this determination and advised the OOR of its position through affidavits and supporting evidence, the OOR's inquiry should have ended with regard to those responsive CSI Records, and "the OOR should have yielded jurisdiction of [Requester's] request to the PUC." *Id*. Thus, the proper forum for Requester to challenge the PUC's determination that there are responsive records containing CSI or are CSI is with the PUC, not the OOR.[20] As a result, any challenge to transmittal letters that contain CSI and other CSI Records is outside the OOR's authority, and the Final Determination directing their disclosure is reversed.

However, our inquiry does not end here, and we now turn to the OOR's Final Determination directing the disclosure of Non-CSI Records.[21]

*B. Non-CSI Records*

The Non-CSI Records consist of transmittal letters not containing or not being alleged to contain CSI and other records submitted by Energy Transfer to the PUC not containing or are not being alleged to contain CSI. Because these records are not alleged to contain or are not CSI, they are not entitled to protection under the CSI Act. Thus, we must determine whether, as Petitioners contend, "both the transmittal letters and attachments BIE received from [Energy Transfer] are exempt from disclosure" under the RTKL exceptions, (PUC's Br. at 25; *see* Energy Transfer's Br. at 39-49), or as Requester argues are disclosable because Petitioners

---

[20] As the Supreme Court noted, "[o]ur holding here does not foreclose [Requester's] ability to challenge Energy Transfer's CSI-designation on procedural or substantive grounds pursuant to the CSI Act and corresponding PUC regulations." *Friedman II*, 265 A.3d at 434 n.13.

[21] To the extent Petitioners argue that all of the responsive records are covered by the RTKL exceptions, we need not address those exceptions regarding the CSI Records because those records are not subject to disclosure under the RTKL.

failed to meet their burden of proving the applicability of those exceptions. We begin with the non-CSI transmittal letters.

### 1. Non-CSI Transmittal Letters

Petitioners argue that all the responsive records, which would include the non-CSI transmittal letters, are protected from public disclosure by the claimed RTKL exceptions and the OOR erred in concluding otherwise. Requester asserts the OOR committed no error because transmittal letters are to be treated as public records under Section 102.3(b)(1) of the PUC's regulations.

As *Friedman II* recognized, the RTKL distinguishes between **access** to records and the **public nature** of records. Section 306 of the RTKL states "[n]**othing** in this act **shall supersede or modify the public** or nonpublic **nature of a record** or document **established in** Federal or **State** law, **regulation** or judicial order or decree." 65 P.S. § 67.306 (emphasis added). "Section 306 of the RTKL provides that [state] law operates to supersede contrary provisions" of the RTKL where that law establishes the public nature of a document. *Heltzel*, 90 A.3d at 831. "Once 'established' by statute as 'public,' a record is no longer subjected to a traditional public record analysis under the RTKL." *Id.* at 832.

The OOR relied on Section 102.3(b)(1) of the PUC's regulations to hold that transmittal letters are disclosable public records. (Final Determination at 16-18.) This regulation states:

> When a public utility is required to submit a record that contains [CSI] to the [PUC], the public utility shall do the following:
>
> > (1) Clearly state in its transmittal letter to the [PUC] that the record contains [CSI] and explain why the information should be treated as confidential. **The transmittal letter will be treated as a public record** and may not contain any [CSI].

24

52 Pa. Code § 102.3(b)(1) (emphasis added).

Here, non-CSI transmittal letters "will be treated as a public record . . . ." *Id.* Subsection (b)(1) does not include, as Section 102.3(b)(2) (relating to other records submitted by a utility) does, the statement "subject to the [RTKL]," which specifically invokes the RTKL's processes. *Compare* 52 Pa. Code § 102.3(b)(1), *with* 52 Pa. Code § 102.3(b)(2). Having been designated a "public record" by Section 102.3(b)(1) without any limitation, those non-CSI transmittal records are no longer subject to the traditional public record analysis, which would include a consideration of the RTKL's exceptions. *Heltzel*, 90 A.3d at 832. Thus, although Petitioners argue that the responsive **non**-**CSI** transmittal letters are exempt from disclosure pursuant to Section 708(b)(2)-(3), (11), (17) of the RTKL, non-CSI transmittal letters were made public, but not "subject to the [RTKL]," 52 Pa. Code § 102.3(b)(2), and the RTKL's exceptions may not be used to alter the designated public nature of those letters. This holding is consistent with *Friedman II* because, unlike the records at issue in *Friedman II*, the inquiry here does not involve transmittal letters that were designated as erroneously containing CSI. Rather, our analysis on this issue relates **only** to **non**-**CSI** transmittal letters, which are to be treated as a public record without limitation by the PUC's regulations.

2. Non-CSI Records

There is no dispute the OOR has the authority to consider whether the non-CSI records were exempt from disclosure pursuant to Section 708(b)(2)-(3), (11), or (17). Rather, the issue is whether the OOR erred in concluding that Petitioners did not meet their burden of proving the applicability of those exceptions to these non-CSI records.

Regarding the public nature of and public access to records submitted by a public utility, Section 3(b) of the CSI Act directs the PUC to develop procedures for public utilities to submit their records, which should provide two categories of records, those which are public and subject to the RTKL, and those which are confidential and not subject to the RTKL. 35 P.S. § 2141.3(b). In accordance with Section 3(b) of the CSI Act, Section 102.3(b)(2) of the regulations provides the following:

> When a public utility is required to submit a record that contains [CSI] to the [PUC], the public utility shall do the following:
>
> . . . .
>
> (2) Separate the information being filed into at least two categories:
>
> (i)  Records that are public in nature and subject to the [RTKL].
>
> (ii)  Records that are treated as containing [CSI] and not subject to the RTKL.

52 Pa. Code § 102.3(b)(2). While this regulation indicates that records that do not contain CSI (excluding non-CSI transmittal letters) are public in nature, it specifically links, without limitation, those records to the RTKL's provisions. The RTKL's provisions include the Section 708(b) exceptions.

Regarding public access to records, "[c]onflicts as to public access, as opposed to public nature, are governed by Section 3101.1 of the RTKL[, 65 P.S. § 67.3101.1]." *Heltzel*, 90 A.3d at 832. Section 3101.1 of the RTKL provides: "If the provisions of [the RTKL] regarding access to records conflict with any other Federal or State law, the provisions of [the RTKL] shall not apply." 65 P.S. § 67.3101.1. Here, there is no conflict as to how **Non-CSI** Records are to be

26

accessed by the public because, although there are regulations describing how challenges to a designation of a record as CSI are to be made to the PUC, 52 Pa. Code § 102.4, there are none describing how the public can request access to non-CSI records in the first instance. Rather, both the CSI Act and the regulations link the non-CSI records to the RTKL and its provisions.

Under the RTKL, the burden is on Petitioners to prove, by a preponderance of the evidence, the applicability of a RTKL exception. *See* 65 P.S. § 67.708(a)(1); *Pa. State Police v. Kim*, 150 A.3d 155, 157 (Pa. Cmwlth. 2016). "A preponderance of the evidence under the RTKL is 'tantamount to a more likely than not inquiry.'" *Pa. State Police*, 150 A.3d at 157 n.5 (quoting *W. Chester Univ. v. Schackner*, 124 A.3d 382, 393 (Pa. Cmwlth. 2015)). Here, Petitioners submitted affidavits and a verified statement to meet their burden of proof.

Generally,

> [a]ffidavits are the means through which a governmental agency details the search it conducted for the documents requested and justifies nondisclosure of the requested documents **under each exemption upon which it relied []**. The affidavits **must be detailed, nonconclusory, and submitted in good faith**. . . . Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned. . . . In other words, **a generic determination or conclusory statements are not sufficient to justify the exemption of public records**.

*Off. of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013) (en banc) (citation omitted) (emphasis added); *see also McGowan v. Pa. Dep't of Env't Prot.*, 103 A.3d 374, 382-83 (Pa. Cmwlth. 2014) (generally, where "no evidence has been presented to show that [an agency] acted in bad faith, the averments in [that agency's] affidavits should be accepted as true."). However, exceptions to the

27

RTKL are to be read narrowly. *Pa. Dep't of Educ. v. Bagwell*, 131 A.3d 638, 646 (Pa. Cmwlth. 2016).

With these principles in mind, we turn to the Section 708(b) exceptions Petitioners' assert apply to the remaining, responsive Non-CSI Records.

a. Public Safety and Public Utility Infrastructure Security Exceptions

The PUC contends Metro's "affidavit identified [] specific records within the scope of" the Request, which include "blast radius zones, damage assessments, and operating parameters of [Energy Transfer] pipelines, and [] how release of those records risks harm to the public and [Energy Transfer] pipelines from criminal or terrorist acts." (PUC's Br. at 26.) Moreover, the PUC maintains its affidavits establish that the responsive "records clearly relate to a public safety activity, BIE's investigation of [Energy Transfer's] pipelines," and disclosure would be "reasonably likely to endanger public safety and public utility infrastructure." (*Id.*)

Energy Transfer argues the public safety exception under Section 708(b)(2) "exempts the requested records because they involve emergency response plans," and the public utility infrastructure security exception under Section 708(b)(3) "exempts many of the records because disclosure would create a reasonable likelihood of endangering the safety or the physical security of public utility infrastructure." (Energy Transfer's Br. at 42.) Energy Transfer asserts the OOR erred in comparing the Request in this case to the request at issue in *Friedman I* because, in *Friedman I*, Requester sought specific "blast radius calculations," which allowed the PUC to identify specific responsive records to which the claimed exceptions applied. (*Id.* at 44.) In essence, Energy Transfer contends Metro's affidavit was not conclusory, but reflected a response to Requester's "open-ended and untethered" request for documents encompassing every transmittal letter and

28

attached record Energy Transfer has ever submitted pursuant to the CSI Act.[22] (*Id.* at 44-45.)

Requester responds Petitioners offer mere speculation in the affidavits and verified statement that Non-CSI Records **could** present a security risk if released. Requester asserts Nardozzi fails to describe any Energy Transfer designated Non-CSI Records or explain how the Non-CSI Record disclosure could cause a security risk. Moreover, Requester contends Metro's affidavit centers on records marked as CSI, without addressing Requester's request for attachments specifically designated as non-CSI. Requester "accepts the possibility that disclosure of **some** of the records could create a security risk," but argues Petitioners "have not provided **any** detail as to the scope of these records that would enable an assessment of which records may or may not implicate security implications." (Requester's Br. at 20 (emphasis in original).)

Section 708(b)(2), the public safety exception, exempts the following records from access under the RTKL: "[a] record maintained by an agency in connection with the military, homeland security, national defense, law enforcement or other public safety activity that, if disclosed, would be reasonably likely to jeopardize or

---

[22] Regarding Section 708(b)(2)-(3), Energy Transfer argues in its reply brief that Requester's "argument reinforces the compelling need **to treat the records at issue as [CSI]**, such that challenges to the designation will be adjudicated **by the PUC under the CSI Act**, not by [the] OOR under the RTKL. Every document [the] OOR ordered to be released is necessarily, by the terms of the Request, something transmitted by Energy Transfer to the PUC's [BIE] as [CSI]." (Energy Transfer's Reply Br. at 12 (emphasis added).) This argument was made, however, in reference to the claimed public safety and public utility infrastructure security exceptions pursuant to the RTKL. Because our analysis here involves **only** Requester's request for **Non**-CSI Records, which Petitioners' claim are exempt from disclosure pursuant to the RTKL, we find no support for Energy Transfer's argument that these Non-CSI Records should be treated as CSI Records. Here, Item No. 3 of the Request sought, specifically, records which are **public in nature and subject to the RTKL** that accompanied the transmittal letters at issue. (R.R. at 0009a.)

threaten public safety or preparedness or public protection activity[.]" 65 P.S. § 67.708(b)(2). To successfully invoke

> this exception, an agency must show: (1) the record at issue relates to a law enforcement or public safety activity; and[] (2) disclosure of the record would be "reasonably likely" to threaten public safety or a public protection activity. *Adams*[ *v. Pa. State Police*, 51 A.3d 322 (Pa. Cmwlth. 2012)]. In interpreting the "reasonably likely" part of the test, as with all security-related exceptions, we look to the likelihood that disclosure would cause the alleged harm, requiring more than speculation.

*Carey v. Pa. Dep't of Corr.*, 61 A.3d 367, 374-75 (Pa. Cmwlth. 2013). Section 708(b)(3), the public utility infrastructure security exception, states: "The following are exempt from access by a requester under this act: . . . [a] record, the disclosure of which creates a reasonable likelihood of endangering the safety or the physical security of a building, public utility, resource, infrastructure, facility or information storage system[.]" 65 P.S. § 67.708(b)(3). In order to meet this exception, "the proponent must show that the disclosure of the records, rather than the records themselves, would create a reasonable likelihood of endangerment to the safety or physical security of certain structures." *McKelvey*, 255 A.3d at 394.

Both of these exceptions are security related, and "[a]n agency must offer more than speculation or conjecture to establish the security-related exceptions under the [RTKL]." *California Borough v. Rothey*, 185 A.3d 456, 468 (Pa. Cmwlth. 2018); *see also Lutz v. City of Philadelphia*, 6 A.3d 669, 676 (Pa. Cmwlth. 2010). A substantial and demonstrable risk is one that is "'actual or real and apparent.'" *Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 180 (Pa. Cmwlth. 2019) (quoting *Carey*, 61 A.3d at 373) (emphasis omitted).

Petitioners rely on the affidavits and verified statement to argue they established the applicability of both the public safety exception and the public utility infrastructure security exception, but the OOR found this evidence to be insufficient. (Final Determination at 25.) Reviewing that evidence, we agree with the OOR.

Here, Secretary's affidavit states only that BIE "has initiated numerous noncriminal investigations against" Energy Transfer, and the PUC "does not have any responsive records other than those that are part of these [BIE] investigations." (R.R. at 0095a.) The Secretary's affidavit offers no insight or details related to these exceptions. Metro's affidavit states "[m]any of the numerous **records** submitted to [BIE] under Sunoco Pipeline's transmittal letters **contain '[CSI]'**. . . . In my professional opinion, **release** of records **marked as CSI** would **compromise security** against sabotage or criminal or terroristic acts regarding pipeline facilities" in a number of ways. (*Id.* at 0103a (emphasis added).) While Metro's attestation provides that many records submitted to BIE contain CSI and describes specific dangers related to releasing records marked as CSI, his statement referenced security concerns related only to CSI Records. Metro does not identify or address records not containing or not constituting CSI or explain why release of those records would meet the standards required by these exceptions. Nardozzi's verified statement similarly focused on CSI Records. (R.R. at 0077a-0081a.) Therein, Nardozzi referenced those "[r]ecords in possession of the PUC **that contain** [Energy Transfer's] [**CSI**] . . . that, if disclosed, could be used to facilitate damage or disruption to [Energy Transfer's] pipelines." (*Id.* at 0078a (emphasis added).) As with Metro's affidavit, Nardozzi's verified statement does not identify or address records beyond those designated as CSI or containing CSI or explain why the Non-CSI Records fall within one of these exceptions.

31

Based on the evidence presented, Petitioners did not show it was more likely than not that release of the **Non-CSI** Records "would be 'reasonably likely' to threaten public safety or a public protection activity," *Carey*, 61 A.3d at 374-75, or that disclosure of the **Non-CSI** Records "would create a reasonable likelihood of endangerment to the safety or physical security of certain structures," *McKelvey*, 255 A.3d at 394. For these reasons, the OOR did not err in concluding Petitioners did not meet their burden of proving that the public safety and public utility infrastructure security exceptions applied to exempt the Non-CSI Records from disclosure.

### b. Trade Secrets/Confidential Proprietary Information Exception

Energy Transfer argues Nardozzi's verified statement is sufficient to support its argument that Item Nos. 2 and 3 of the Request implicate records exempt from disclosure pursuant to the trade secrets/confidential proprietary information exception found in Section 708(b)(11).[23] Energy Transfer contends it "has consistently provided the PUC with valuable trade secret information, such as processes, formulas, and plans, which may be implicated by the Request" and generally argues Nardozzi's verified statement satisfies the requirements of Section 708(b)(11) for establishing this exception. (Energy Transfer Br. at 45-49.) Energy Transfer argues the OOR erred in rejecting this exception based on a lack of specificity in the response because, Energy Transfer asserts, the Request lacked specificity and there are thousands of pages of documents implicated by Requester's broad request. (Energy Transfer Br. at 49.)[24] Energy Transfer also argues that, if

---

[23] The PUC did not offer any argument regarding this exception.

[24] Energy Transfer further contends "[t]he record is clear that hundreds of transmittal letters and thousands of pages of documents are implicated, and that Energy Transfer would not have submitted any of those records to the PUC **under the CSI Act** regulations if it did not believe that they needed to be kept confidential." (Energy Transfer's Br. at 49 (emphasis added).) To the

additional specificity was needed, the OOR should have afforded it the opportunity to provide more supporting evidence.

Requester argues Nardozzi's verified statement "merely parrots back th[e] definition" of a trade secret and does not make any representations about any particular record. (Requester's Br. at 22.) Requester asserts Nardozzi's verified statement is devoid of detail regarding what documents would be exempt under this exception. According to Requester, simply reciting the statute, without more, is insufficient to exempt records under this exception. Energy Transfer, Requester argues, is seeking a blanket exception for all records because some of those documents might be exempt, a result that is inconsistent with the RTKL.

Section 708(b)(11) exempts from disclosure "[a] record that constitutes or reveals a trade secret or confidential proprietary information." 65 P.S. § 67.708(b)(11). The RTKL defines the terms "confidential proprietary information" and "trade secret" differently; thus, these terms must be analyzed separately. *Off. of the Governor v. Bari*, 20 A.3d 634, 648 (Pa. Cmwlth. 2011). Confidential proprietary information is defined as: "[c]ommercial or financial information received by an agency: (1) which is privileged or confidential; and (2) the disclosure of which would cause substantial harm to the competitive position of the person that submitted the information." 65 P.S. § 67.102. To be considered confidential proprietary information, the information must satisfy both components of this two-part test. *Bari*, 20 A.3d at 649. When determining whether information is "'confidential,' we consider the efforts the parties undertook to maintain [its] secrecy." *Dep't of Pub. Welfare v. Eiseman*, 85 A.3d 1117, 1128 (Pa. Cmwlth. 2014)

extent that Energy Transfer argues this information, or these records, are CSI subject to the CSI Act, we emphasize that the analysis pursuant to Section 708(b)(11) concerns only **Non**-CSI Records.

*rev'd on other grounds*, 125 A.3d 19 (Pa. 2015). In considering whether disclosing confidential information will result in substantial harm to the competitive position of the entity from which the information was obtained, that entity must show: "(1) actual competition in the relevant market; and[] (2) a likelihood of substantial competitive injury" based on the release of the information. *Dep't of Corr. v. Maulsby*, 121 A.3d 585, 590 (Pa. Cmwlth. 2015).

Like the confidential proprietary information test, trade secret information must satisfy both components of a two-part test in order to be considered a trade secret. A trade secret is defined as:

> Information, including a formula, drawing, pattern, compilation, including a customer list, program, device, method, technique or process that:
>
> (1) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

65 P.S. § 67.102. Information may constitute a trade secret under the RTKL

> based upon the following factors: (1) the extent to which the information is known outside of the business; (2) the extent to which the information is known by employees and others in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and to competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Smith on behalf of Smith Butz, LLC v. Pa. Dep't of Env't Prot.*, 161 A.3d 1049, 1064 (Pa. Cmwlth. 2017). "A 'trade secret' must be an 'actual secret of peculiar

importance to the business and constitute competitive value to the owner.'" *Id.* (quoting *Parsons v. Pa. Higher Educ. Assistance Agency*, 910 A.2d 177, 185 (Pa. Cmwlth. 2006)). Substantial secrecy and competitive value are the most important of the trade secret criteria. *Id.*

In the verified statement, Nardozzi explained:

> Since 2008, [Energy Transfer] has provided the PUC with **numerous records** containing **commercial and financial information** regarding [Energy Transfer's] operations. This information includes details regarding [Energy Transfer's] specialized business practices and operations that [were] developed after investing significant time and resources. For example, Sunoco is required to create various procedures and plans for construction, operation, and maintenance of its pipelines pursuant to 49 C.F.R. Part 195. Each pipeline operator is required to have its own such procedures and plans. Sunoco has invested significant time and resources to create these proprietary documents that have substantial economic value within the industry.

(R.R. at 0079a (emphasis added).) Regarding trade secrets, Nardozzi stated:

> Since 2008, [Energy Transfer] has consistently provided the PUC with valuable trade secret information, such as **processes, formulas, and plans**, which **may** **be implicated** by the requests. This information includes details regarding [Energy Transfer's] specialized business practices and operations, which derive their value from not being generally known. This information is the result of [Energy Transfer's] years of experience operating its pipeline system and significant monetary investment in the development of its proprietary processes.

(*Id.* (emphasis added).) Finally, Narduzzi indicated "[Energy Transfer] treats its proprietary and trade secret information as confidential and takes substantial steps to guard its secrecy" by "limiting access . . . to authorized personnel and requiring non-disclosure agreements prior to disclosing" the information to third parties. (*Id.* at 0079a-0080a.)

35

Nardozzi's verified statement does not specify any particular records as being responsive and simply tracks the language found in the statute itself, although not completely. Here, Nardozzi alluded to records "which **may** be implicated by the Request[]," (*id.* at 0079a (emphasis added)), but did not provide or describe any particular Non-CSI Records so as to allow for a determination as to whether those responsive records were actually subject to this exception. There is no meaningful way to determine if a responsive record, listed in the verified statement merely as "commercial [or] financial information" or "processes, formulas, and plans," (*id.*), is implicated by the Request, and exempt from disclosure, based on the generic information provided by Nardozzi. "[A] generic determination or conclusory statements are not sufficient to justify the exemption of public records." *Scolforo*, 65 A.3d at 1103.

Also absent from Nardozzi's verified statement was reference to the competitive harm to Energy Transfer if the responsive records were released and the competitive value the records provided to Energy Transfer, which are required to establish that the responsive records were, respectively, confidential and privileged information or a trade secret. *Maulsby*, 121 A.3d at 590; *Smith*, 161 A.3d at 1064. Finally, although Energy Transfer now argues that Nardozzi could not be more specific due to the number of potential responsive records implicated, the size of a request does not excuse the obligation to produce responsive records. *Pa. State Sys. of Higher Educ. v. Ass'n of State Coll. & Univ. Facs.*, 142 A.3d 1023, 1031-32 (Pa. Cmwlth. 2016) (*PASSHE*). Rather, where the number of potentially responsive records is so large that determining whether they would be exempt from disclosure within the timeframe is not possible, the agency must provide the OOR with information regarding the number of potential records and the amount of time

needed in order for the OOR to grant additional time to determine if exceptions would apply. *Id.* at 1032. There is no indication in the record of any such request in this matter.

For these reasons, the OOR did not err in finding that Energy Transfer did not meet its burden of proving that the Non-CSI Records were exempt under the trade secrets/confidential and privileged information exception.

### c. Noncriminal Investigation Exception

Petitioners argue the OOR erred in finding that they did not meet their burden of proof on the noncriminal investigation exception because the affidavits and verified statement establish that all of the responsive records were submitted by Energy Transfer to BIE as part of ongoing investigations. This is because, as the PUC contends, "the purpose of BIE [is] to conduct investigations and prosecute enforcement actions." (PUC's Br. at 27 (emphasis omitted).) Moreover, investigations of pipelines conveying natural or artificial gas or petroleum products, like the one operated by Energy Transfer, are part of the PUC's official duties as the investigations are conducted pursuant to the Public Utility Code, 66 Pa.C.S. §§ 101-3316, compliance with which the PUC is responsible for enforcing. The PUC argues its "affidavits establish[] that BIE is and has been, for more than five years, engaged in 'a systematic or searching inquiry, a detailed examination, or an official probe' – multiple noncriminal investigations – of [Energy Transfer] and affiliated companies." (PUC's Br. at 29 (quotation omitted).)

Energy Transfer argues that for Petitioners to meet their burden of proof under *Sherry v. Radnor Township School District*, 20 A.3d 515 (Pa. Cmwlth. 2011), and *Moore v. Office of Open Records*, 992 A.2d 907 (Pa. Cmwlth. 2010), they were only required to supply affidavits, made under penalty of perjury, which constituted

competent evidence supporting the application of the exceptions. (Energy Transfer's Br. at 41.) Energy Transfer acknowledges that Metro's affidavit is "laconic," but nonetheless asserts the affidavit is complete and supports the claimed exception. (*Id.* at 42.) In addition, Energy Transfer contends the "OOR has no cause to require the specifics of the noncriminal investigations at issue in order to conclude that they exist," and there was no evidence of bad faith, which would provide a basis to reject Metro's affidavit. (*Id.*)

Requester argues that not only did Petitioners fail to provide any case numbers, but they also failed to even describe the investigations and/or the records themselves. The PUC's reliance on the mere assertion of numerous, ongoing investigations, Requester maintains, is insufficient to exempt all of the responsive records Energy Transfer has ever submitted. Requester points out the Request did not seek any documents created by the PUC or investigative materials, such as the PUC's notes and analysis; rather, the Request sought transmittal letters and Non-CSI Records submitted by Energy Transfer.

Section 708(b)(17)(ii) exempts from disclosure "record[s] of an agency relating to a noncriminal investigation, including: . . . [i]nvestigative materials, notes, correspondence and reports." 65 P.S. § 67.708(b)(17)(ii). Investigation, as used in Section 708(b)(17), is not defined by the RTKL, but has been defined as meaning "a systematic or searching inquiry, a detailed examination, or an official probe" that is a "part of the agency's official duties." *Sherry*, 20 A.3d at 523 (quoting *Pa. Dep't of Health v. Off. of Open Recs.*, 4 A.3d 803, 811, 814 (Pa. Cmwlth. 2010)). Additionally, an agency must show that the investigation "surpass[es] the [agency's] routine performance of its duties and entail a systemic or searching inquiry, detailed examination, and/or official probe." *Id.* An agency "cannot rely on broadly stating

38

what investigations . . . entail" to meet its burden under this exception "because **merely stating that an investigation occurred is not sufficient**." *Pa. Dep't of Lab. & Indus. v. Darlington*, 234 A.3d 865, 877 (Pa. Cmwlth. 2020) (citing *Bagwell*, 131 A.3d at 660) (emphasis added). In determining whether this exception applies, "courts [should] **focus[] on the nature of the particular documents involved** and whether they were **created during the course of an investigation**." *Dep't of Health*, 4 A.3d at 813 (emphasis added). Applying these principles, we discern no error in the OOR's determination that Petitioners did not meet their burden of proof on this exception.

In *Pennsylvania Public Utility Commission v. Gilbert*, the requester sought access to records related to underground natural gas pipelines, including "[a]ll records related to probable violations identified by the [PUC,]" such as those related to safety and kept by pipeline operators for inspection, "[a]ll records related to pipeline incidents reported to the [PUC]," and any other communications received by the PUC from pipeline operators as mandated by the "Pipeline Safety Improvement Act of 2002."[25] 40 A.3d 755, 757 (Pa. Cmwlth. 2012). The PUC denied the request for incident reports, as well as communications from pipeline owners and operators regarding public awareness programs procured by PUC gas safety inspectors during their compliance evaluations based on the noncriminal investigation exception. The requester appealed, and the OOR found the responsive records to be public and not exempt from disclosure under Section 708(b)(17).

On appeal to this Court, the PUC argued the OOR erred in not exempting the requested gas safety inspection records under the noncriminal investigation exception. This Court agreed and reversed, explaining

_____

[25] This Act was created through Chapter 601 of Title 49 of the United States Code, 49 U.S.C. §§ 60101-60137.

[h]ere, the investigations performed by the PUC are done as part of the requirement for eligibility for funding from the United States Department of Transportation Pipeline and Hazardous Materials Safety Administration (PHMSA).[] In order to qualify for funding, PHMSA requires an annual certification by the PUC. To facilitate the certification process, the PUC created [the BIE] and hired gas safety inspectors whose sole duty is to conduct inspections/investigations of gas utilities for compliance with applicable state and federal gas safety regulations. (Affidavit of Paul Metro . . . .) The gas safety inspectors' inspections/investigations involve the investigation of the gas utility's entire operation, the plant, the infrastructure, the records and employees. (*Id.* . . .) The purpose of these inspections/investigations is to assess whether the gas utility is providing the quality of service mandated by law. (*Id.*) **The gas safety inspections involve systematic, searching, detailed examinations of a natural gas utility's operations and whether such operations were in compliance with the applicable federal and state pipeline safety regulations**.

*Gilbert*, 40 A.3d at 759-60 (emphasis added). The Court in *Gilbert* compared the matter before it to the one in *Department of Health*, which involved records from government-mandated inspections and surveys of nursing homes the disclosure of which could lead to less cooperation in future inspections and surveys, and determined the records requested in *Gilbert* were related to BIE investigations and inspections to ensure compliance with the Code and other state and federal regulations. *Id*. at 760. Noting that the records at issue involved investigative materials of BIE's inspectors and ordering disclosure could reveal, among other information, unsubstantiated allegations, the inspectors' notes, and employee statements, the Court observed such disclosure could lead to less cooperation in future investigations or inspections as a result contrary to public policy. *Gilbert*, 40 A.3d at 760-61. Ultimately, the Court concluded the inspections qualified as

noncriminal investigations and the requested investigative materials and utility employee statements were exempt from public disclosure. *Id*. at 761-62.

In *Darlington*, this Court distinguished between records resulting from regular inspections and those from inspections or investigations which exceeded the regular review of an agency. There, a requester sought "any and all records and relevant materials . . . including but not limited to correspondence, inspections, investigations, reports, citations, violations, penalties, photographs, etc.[,] pertaining to" a specific incident at an energy plant. 234 A.3d at 868. The Department of Labor and Industry (DOL) denied the request as it implicated records related to a noncriminal investigation. The requester appealed to the OOR, arguing the DOL's response was vague and non-specific. The DOL filed a position statement explaining the records were gathered pursuant to its investigation of whether the specific incident violated the Boiler and Unfired Vessel Pressure Law[26] (Boiler Law), pursuant to its powers under Section 4 of the Boiler Law, 35 P.S. § 1331.4. The DOL also submitted an attestation by the director of the DOL's Bureau of Occupational and Industrial Safety (BOIS), which we characterized as stating that "BOIS conducted a thorough examination of the records and determined the records fell under the 'statutory mandate' of the Boiler Law and that none of the records fell into an exception to the noncriminal investigation exemption." *Id*. The OOR asked the DOL to provide a supplemental attestation with additional details and descriptions of the records. In this supplemental attestation, the BOIS director stated that some inspections were "regular inspections performed on a periodic basis. Others, however, [were] the direct result of a boiler and/or other regulated pressure vessel incident or a complaint." *Id*. at 869.

---

[26] Act of June 18, 1998, P.L. 655, 35 P.S. §§ 1331.1-1331.18.

The OOR granted in part and denied in part the requester's appeal. After reviewing the original and supplemental attestations by the BOIS director, and examining the Boiler Law, the OOR distinguished *Department of Health* and found that the attestations established an exemption for the inspections related to the incident but did not establish an exemption for the regular inspections, which did not rise to the level of a noncriminal investigation. On the DOL's appeal, this Court addressed the regular boiler field inspection reports at issue, agreeing with the OOR's determination

> that the routine inspections at issue d[id] not meet the standards of a "noncriminal investigation" as set out in our precedent for essentially four reasons: 1) because the Boiler Law itself differentiates between "inspections" and "investigations"; 2) because the inspections can be performed by non-[DOL] personnel while the investigations cannot be; 3) the affidavits did not provide sufficient details to show how the inspections met the standards in our case law; and 4) the disclosure here does not raise the same public policy concerns as were present in *Department of Health*.

*Darlington*, 234 A.3d at 874-75. Regarding the BOIS director's attestations, we held they were insufficient to establish the exception's applicability because they

> only list[] what the safety inspection reports entail and gives **a very general description** of what the [DOL] does in both investigations and inspections. Importantly, [the BOIS director] also does not distinguish between what a routine field *inspection* involves compared to an *investigation* of boiler-related incidents, notwithstanding that the statute distinguishes between the two activities.

*Id*. at 876 (bold emphasis added). We held the attestations did not demonstrate that the DOL was "making a systematic and searching inquiry, a detailed examination, or an official probe" into operations and compliance with the Boiler Law and regulations. *Id*. (quoting *Dep't of Health*, 4 A.3d at 811). Thus, the attestations did

42

not support a finding that the regular inspections were noncriminal investigations the records of which would be exempt.

Examining the evidence offered by Petitioners here, we conclude this matter is more like *Darlington* than *Gilbert*, and the noncriminal investigation exception requirements, as set forth in our precedent, have not been met. Petitioners appear to invite this Court to establish a bright line rule. In Petitioners' view, to establish the applicability of this exception, they only need to submit an affidavit declaring the ongoing occurrence of "multiple investigations." This position is contrary to our precedent, which holds that **"merely stating that an investigation occurred is not sufficient**." *Darlington*, 234 A.3d at 877 (emphasis added).

Metro's affidavit, which the PUC asserts satisfies its burden, states that BIE has been engaged in multiple noncriminal investigations of Energy Transfer for more than five years, BIE had received "hundreds of transmittal letters with thousands of pages of attached documents," and BIE "does not have any requested records other than records that are part of a noncriminal investigation." (R.R. at 102a-03a.) These statements reflect only that noncriminal investigations of Energy Transfer have occurred, which is insufficient under our precedent, and do not establish that the investigations were "a systematic and searching inquiry, a detailed examination, or an official probe," rather than just being part of its "routine performance of its duties." *Sherry*, 20 A.3d at 523.

Further, Metro stated: "To access and review all of the documents requested by [Requester] would be unduly burdensome on [BIE] staff," and the number of documents involved and the limited timeframe prevented BIE from confirming the exact number of documents involved. (R.R. at 0102a-03a.) However, determining whether a record is exempt under this exception requires the Court to "focus[] on the

43

nature of **the particular documents involved** and whether they were created during the course of an investigation." *Dep't of Health*, 4 A.3d at 813 (emphasis added). The failure to review the responsive documents and provide details as to why they fall within this exception, or to request additional time to do so, *PASSHE*, 142 A.3d at 1031-32, prevents a determination of whether a **particular** document involved was created during the course of a noncriminal investigation.

Secretary's affidavit provides **even less** than Metro's affidavit. Therein, Secretary simply states that BIE "has initiated numerous noncriminal investigations against" Energy Transfer and has no responsive records other than those related to those investigations. (R.R. at 0095a.) Nardozzi's verified statement is also vague and general in nature, with no indication of which, if any, of the responsive records implicate an ongoing noncriminal investigation, either by number or general description. (*Id.* at 0077a-0080a.) Nardozzi indicated Energy Transfer submits information to the PUC for a variety of reasons, including in applications for operational approvals and in compliance filings, which could be viewed as being contrary to the PUC's claim that the only records the PUC has relate to noncriminal investigations. (*Id.* at 0078a.) Accordingly, Secretary's affidavit and Nardozzi's verified statement do not show that the requested records relate to a noncriminal investigation, which would be "a systemic or searching inquiry, detailed examination, and/or official probe," rather than just being part of its "routine performance of its duties." *Sherry*, 20 A.3d at 523.

The affidavits and verified statement submitted in this matter are unlike the more detailed affidavit found to be sufficient in *Gilbert*. The affidavits in *Gilbert* established that the investigations performed were done pursuant to PHMSA, described the purpose of those investigations, and noted the specific gas safety

44

inspections there involved "systematic, searching, detailed examinations of a natural gas utility's operations and whether such operations were in compliance with the applicable federal and state pipeline safety regulations." *Gilbert*, 40 A.3d at 759-60. In contrast, Metro's and Secretary's affidavits offer only obscure references to multiple or numerous ongoing investigations, and do not explain what law or laws these investigations pertain to or the purpose of these investigations, even in a general sense. And, Nardozzi's verified statement suggests Energy Transfer has submitted documents which might be unrelated to ongoing investigations.

Based on our precedent, Petitioners' submissions are simply not enough. Petitioners' evidence must offer some level of specificity beyond that all records received by BIE are exempt by default due to the nature of BIE as an investigative body. This is because an agency cannot rely merely on a statement that an investigation has occurred, without more. *Darlington*, 234 A.3d at 877. For these reasons, the OOR did not err in determining that Section 708(b)(17)'s noncriminal investigation exception does not apply to any responsive Non-CSI Records.

## III.  CONCLUSION

To the extent the OOR held that any transmittal letters or records which are alleged to constitute CSI or contain CSI should be disclosed, under *Friedman I* and *II*, the OOR does not have the authority to consider whether those letters or records actually contain CSI or are CSI. Administration of the CSI Act, which includes determining whether records submitted to the PUC are properly (or improperly) designated as containing or constituting CSI, rests with the PUC, "which has the expertise" to make such determinations. *Friedman II*, 265 A.3d at 432. Accordingly, we reverse the Final Determination of the OOR with regard to this category of records. However, with regard to non-CSI transmittal letters and

45

Non-CSI Records, which Petitioners acknowledged at oral argument exist, we hold the OOR did have the authority to determine whether those records were subject to disclosure under the RTKL. The responsive non-CSI transmittal letters are public records without reference to the RTKL, as set forth in the PUC's regulations, and the OOR did not err in ordering their disclosure. In regard to the responsive Non-CSI Records, the OOR did not err in ordering these records' disclosure because Petitioners did not meet their burden of establishing that the exceptions pursuant to Section 708(b)(2)-(3), (11), and (17) applied to exempt them from disclosure. Thus, we affirm the Final Determination with regard to these categories of records.

**RENÉE COHN JUBELIRER,** President Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Pennsylvania Public Utility Commission, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1560 C.D. 2019 |
| | : | |
| Eric Friedman, | : | |
| Respondent | : | |

| | | |
|---|---|---|
| Energy Transfer, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1576 C.D. 2019 |
| | : | |
| Eric Friedman, | : | |
| Respondent | : | |

## **O R D E R**

**NOW**, April 25, 2023, the October 10, 2019 Final Determination of the Office of Open Records is hereby **AFFIRMED IN PART** and **REVERSED IN PART** in accordance with the foregoing opinion. The parties request in the July 29, 2021 Joint Status Report to stay oral argument in this matter is **DISMISSED** as moot.

 

_____
**RENÉE COHN JUBELIRER,** President Judge