**Judy SHERRY, Appellant**

v.

**RADNOR TOWNSHIP SCHOOL DISTRICT.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 2011.

Decided April 4, 2011.

BEFORE: COHN JUBELIRER, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

Judy Sherry (Sherry) appeals from the January 20, 2010, orders of the Court of Common Pleas of Delaware County (trial court) denying her petition for review and denying her motion to compel an *in camera* inspection of documents as well as the depositions of certain employees of the Radnor Township School District (District). Sherry had filed the petition for review in response to a final determination of the Office of Open Records (OOR) denying her appeal from the District's denial of her request to inspect any and all de-identified records or reports of Academic Honor Code (Honor Code) violations maintained by the District for the 2007–2008 and 2008–2009 school years.[1]

On August 26, 2009, Sherry formally requested the aforementioned de-identified records or reports from the District. (R.R. at 12a.) One week later, on September 2, 2009, the District's Right–to–Know Law compliance officer advised Sherry that a search for the records was underway, that the search was taking longer than expected, and that legal review by the District's solicitor would be necessary before any documents would be turned over. (R.R. at 14a.) The compliance officer requested an extension of thirty days to respond to Sherry's request, and the District's solicitor thereafter sought an advisory opinion from OOR. (R.R. at 14a, 16a–17a.) However, Sherry declined the District's request for an extension, and OOR declined to issue an advisory opinion.

By letter dated September 24, 2009, the District's solicitor advised Sherry that her

Daniel J. Sherry, Jr., Philadelphia, for appellant.

Michael V. Puppio, Jr., Media, for appellee.

---

1. The term "de-identified" refers to the fact that the names of the student who committed the violation and the teacher who reported the same are blacked out on the record or report. (R.R. at 12a, 86a.)

request was denied. (R.R. at 21a–23a.) The District cited two bases for its denial, the noncriminal investigation exemption found at section 708(b)(17) of the Right–to–Know Law (RTKL), Act of February 14, 2008, P.L. 6, *as amended,* 65 P.S. § 67.708(b)(17), and the concurrent federal law exemption found at section 305(a)(3) of the RTKL, 65 P.S. § 67.305(a)(3), namely the Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g, which essentially prohibits the release of education records without parental consent. *Id.* Sherry then filed an appeal with OOR.

During the course of the appeal, OOR requested additional information from the District specifying the legal and factual basis for its denial of Sherry's request and supporting its response with citations to legal authority and sworn affidavits. (R.R. at 45a.) OOR also requested that the District address the arguments raised by Sherry, including her claim that the requested documents were released to other individuals. *Id.* In response, the District submitted sworn affidavits from Mark Schellenger, principal of Radnor High School, and Carl Rosin, a teacher at Radnor High School and an elected faculty member of the Radnor High School Academic Honor Council (Honor Council). (R.R. at 68a–87a.)

Principal Schellenger explained in his affidavit that disciplinary infractions, including infractions considered to be a violation of the Honor Code, are reported to administration officials via a student discipline and attendance report. (R.R. at 81a.) Principal Schellenger described this report as a single-page document which includes: the student's name and grade; the teacher's name; the date; the period of the offense; a lined area for the teacher to describe the inappropriate behavior; a lined area for the teacher to notate the response to this behavior (verbal reprimand, parent contact, detention); an area at the bottom of the document to record any administrative action (including level of discipline and the specific action taken); and a lined comment area. *Id.* Principal Schellenger indicated that these reports are maintained by the disciplinary secretary in a locked drawer in the administrative office, that a single copy was provided to the Honor Council for its meeting in the spring of 2008, and that the copy was returned to the discipline secretary after the meeting. (R.R. at 81a–82a.) Although the reports were de-identified, Principal Schellenger noted that they nevertheless contained elements that could be used to identify the student involved. (R.R. at 82a.)

Mr. Rosin described the composition of the Honor Council for the 2008–2009 school year as consisting of seven students, four teachers, and one community member/parent representative, noting that there were only six student members in the 2007–2008 school year. (R.R. at 85a.) Mr. Rosin indicated that the student members are selected through a multi-step process, including teacher votes, a written paper, and student body votes. *Id.* Mr. Rosin also indicated that all members of the Honor Council receive training on the confidentiality of student education records under FERPA.[2] *Id.* Mr. Rosin explained that the Honor Council does not maintain or retain possession of the disciplinary reports; instead, the Honor Council receives and reviews a copy of a violation report with the student's and teacher's names redacted and then returns the same

---

2. The District's website indicates that the training is provided by the District's attorney, Michael Levin.

to the disciplinary secretary. (R.R. at 86a.) Corroborating Principal Schellenger's testimony, Mr. Rosin indicated that, despite this redaction, the reports still contain information which could identify the student involved. (R.R. at 87a.) Further, Mr. Rosin noted that the Honor Council does not impose punishment or discipline but reviews the reports to identify relevant issues that need to be addressed with the student body. (R.R. at 86a.)

Based upon alleged inconsistencies in the affidavits and the District's Honor Code,[3] Sherry requested leave from OOR to depose Principal Schellenger and Mr. Rosin, or, alternatively, that OOR conduct a hearing at which these individuals be directed to appear for purposes of cross-examination. (R.R. at 88a.) OOR refused Sherry's request for leave and declined to hold a hearing. (R.R. at 117a.) On November 4, 2009, OOR issued a final determination denying Sherry's appeal. (R.R. at 258a–268a.) OOR agreed with the District that the requested records were exempt as noncriminal investigation records under section 708(b)(17) of the RTKL and that release of the records was precluded by FERPA. *Id.* With respect to FERPA, OOR relied on the affidavits of Principal Schellenger and Mr. Rosin to conclude that the requested records contain person-

ally identifiable information which could potentially identify the students involved in the infractions. *Id.* Sherry thereafter filed a petition for review with the trial court as well as a motion to compel an *in camera* inspection of the requested documents and the depositions of Principal Schellenger, Mr. Rosin, and Attorney Levin. (R.R. at 121a–36a, 271a–90a.)

By orders dated January 20, 2010, the trial court denied Sherry's petition for review and her motion to compel. (R.R. at 545a–46a.) Sherry then filed a notice of appeal with the trial court. In a subsequent opinion in support of its orders, the trial court held that OOR had correctly concluded that the requested documents were exempt as noncriminal investigation records under section 708(b)(17) of the RTKL and that release of the records was precluded by FERPA. (Trial court op. at 7.)

In response to Sherry's assertion that the trial court erred and/or abused its discretion in failing to hold a hearing whereby she could cross-examine Principal Schellenger, Mr. Rosin, and Attorney Levin, the trial court indicated that the RTKL does not require a hearing.[4] *Id.* In addition, the trial court stated that it was satisfied that the requested documents

---

**3.** Sherry alleged the following inconsistencies existed between the Honor Code and the affidavits: the Honor Code provides that a de-identified record is one in which the identity of a student is kept confidential, while the affidavits suggest that the disciplinary reports still contain information which could identify the student; the Honor Code provides that each member of the Honor Council will maintain de-identified records of Honor Code offenses, while the affidavits indicate that the Honor Council maintains no records and only receives a copy for its meeting which is returned to the disciplinary secretary and kept in a locked drawer in the administrative office; and the Honor Code provides that de-identified records are useful as a tool for teaching and reflection about academic hon-

or, while the affidavits indicate that release of the reports would embarrass, humiliate, and further punish the student involved and could serve to prevent teachers from fully and accurately reporting any infractions.

**4.** The trial court did acknowledge our recent decision in *Bowling v. Office of Open Records,* 990 A.2d 813 (Pa.Cmwlth.2010), *petition for allowance of appeal granted,* —— Pa. ——, 15 A.3d 427 (2011), wherein we held that the RTKL does not restrain a reviewing court from conducting a hearing or ordering a remand should the court determine that additional proceedings are necessary for a just, fair, and expeditious resolution.

were protected as a matter of law and that a hearing would be a waste of judicial resources and economy. (Trial court op. at 8.) The trial court further noted that the RTKL does not provide for discovery of any kind, including depositions.[5] *Id.*

■ On appeal to this Court,[6] Sherry first argues that the trial court erred as a matter of law in refusing to permit her to depose or cross-examine witnesses who submitted affidavits on behalf of the District and upon which the OOR relied in denying her appeal.[7] We disagree.

■ We begin by noting that neither the RTKL nor the courts have extended a right to discovery or a right to due process to a requesting party in a RTKL action. While sections 504 and 505 of the Administrative Agency Law, 2 Pa.C.S. §§ 504, 505, provide that a party before an administrative agency is entitled to notice and an opportunity to be heard, including the right to examine and cross-examine witnesses, section 1309 of the RTKL specifically states that the provisions of the Administrative Agency Law are inapplicable to RTKL proceedings. 65 P.S. § 67.1309. Hence, the provisions of the Administrative Agency Law requiring an evidentiary hearing do not apply. *See also Prison Legal News v. Office of Open Records*, 992 A.2d 942 (Pa.Cmwlth.2010). In *Prison Legal News*, we further held that due process does not require a hearing because the right to information provided by the RTKL does not involve a property right; rather, it is a privilege granted by the General Assembly.[8]

Section 1102(a)(2) of the RTKL, 65 P.S. § 67.1102(a)(2), does provide an OOR ap-

5. While the trial court acknowledged that its January 20, 2010, order denying Sherry's petition for review was violative of section 1301(a) of the RTKL, 65 P.S. § 67.1301(a), because it did not contain findings of fact and conclusions of law, the trial court indicated that its current opinion essentially rendered such error harmless. (Trial court op. at 8.)

6. Our scope of review is limited to determining whether the trial court committed an error of law, violated any constitutional rights, or abused its discretion. *SWB Yankees LLC v. Wintermantel*, 999 A.2d 672 (Pa.Cmwlth. 2010).

7. We note that the Pennsylvania School Boards Association has filed an *amicus curiae* brief with this Court supporting the underlying determinations by the District, OOR, and the trial court.

8. In *Prison Legal News*, Paul Wright, the editor of the Prison Legal News, had sought any public records in the possession of the Department of Corrections containing details of claims, settlements, or verdicts of $1,000.00 or more involving the Department from 2001 to 2008, including the initial tort claim/complaint, settlement agreement, general release, or any other document setting forth the facts of the incident giving rise to the claim, settlement, or verdict. Wright also requested a waiver of any fees related to the disclosure. The Department responded that Wright's request required prepayment of $8,750.00, representing approximately 35,000 pages of material, before processing, but did not address Wright's waiver request. Wright again requested a fee waiver, but the Department denied his request. Wright appealed to OOR, which concluded, *inter alia*, that the Department was not required to waive the copying costs and that the estimated cost was reasonable. Wright appealed to this Court, arguing that the RTKL and/or due process entitled him to an evidentiary hearing to challenge the Department's estimate of the number of responsive records the Department used to calculate the amount of the requested prepayment. Wright also argued that the Department did not have unfettered discretion to deny a fee waiver request without providing the reasons for the denial. This Court noted that, pursuant to section 1101(a)(1) of the RTKL, 65 P.S. § 67.1101(a)(1), a requester may raise an issue as to the estimate of the number of pages to be copied in an appeal to the OOR. However, we further held that a requester has no right to an evidentiary hearing under the RTKL or the traditional notion of due process.

peals officer with the discretion to decide whether or not to hold a hearing and section 1101(b)(3), 65 P.S. § 67.1101(b)(3), similarly provides that an appeals officer may hold a hearing prior to the issuance of a final determination. However, section 1102(a)(2) further provides that the decision of whether or not to hold a hearing is not appealable.

Recently, this Court held that the RTKL does not expressly restrain a reviewing court from supplementing the record through a hearing or remand. *Bowling.* We indicated in *Bowling* that, similar to the OOR appeals officer, a reviewing court has discretion to determine if the record created before OOR is sufficient for purposes of judicial review.[9] Nevertheless, neither the aforementioned sections of the RTKL nor our decision in *Bowling* establish a requester's right to a hearing.

Furthermore, this Court has tacitly approved OOR's requests for, and use of, testimonial affidavits in rendering decisions. For example, in *Mitchell v. Office of Open Records*, 997 A.2d 1262 (Pa. Cmwlth.2010), this Court held that the testimonial affidavit of the deputy open records officer at the Pennsylvania State Police provided credible evidence sufficient to support a claimed exemption. The use of such affidavits is especially significant given the strict time limitations imposed on agencies and OOR to make a determination.[10] Moreover, section 1102(a)(1) of the RTKL, 65 P.S. § 67.1102(a)(1), specifically instructs an OOR appeals officer to set a

schedule for the requester and the agency open records officer to submit documents in support of their positions.

In the present case, by letter dated October 5, 2009, OOR advised Sherry and the District that either party could submit additional, unsolicited information within seven days of the date of the letter. (R.R. at 44a.) By letter dated October 16, 2009, the OOR appeals officer requested the District to submit additional information providing the legal and factual basis for the denial of Sherry's request, including sworn affidavits verifying any factual assertions. (R.R. at 45a.) The District responded with the affidavits of Principal Schellenger and Mr. Rosin. (R.R. at 68a–87a.) Sherry thereafter submitted a reply in opposition to the District's response, which included a chart identifying the alleged inconsistencies between the affidavits and the District's Honor Code and website. (R.R. at 88a–116a.) Thus, the appeals officer and trial court were aware of Sherry's objections to the District's affidavits. OOR specifically noted Sherry's objections in its final determination and indicated that the affidavits did not contradict any factual assertions made by the District. OOR concluded that even if, as Sherry alleged, the affidavits contradicted the District's Honor Code and website, the question whether the District is conducting the Honor Council in accordance with its own guidelines was irrelevant to the issues before it. The trial court similarly

---

9. Additionally, we noted in *Bowling* that the RTKL does not expressly restrain a court from reviewing other material, such as a stipulation of the parties, or from conducting an *in camera* review of the requested documents.

10. Sections 901 and 902 of the RTKL, 65 P.S. §§ 67.901, 67.902, provide that an agency shall, within five business days, notify a requester whether the requested record is a public record, whether it has possession, cus-

tody, or control of the record, whether the record requires redaction, whether additional time is necessary to respond to the request, and whether requester has complied with the agency's policy regarding access to the record. Section 1101(b)(1) of the RTKL, 65 P.S. § 67.1101(b)(1), provides that, in the case of an appeal of an agency's denial, OOR shall issue a final determination within thirty days of the date of receipt of the appeal.

noted Sherry's objections to the affidavits and agreed with OOR's conclusion that any alleged inconsistency was irrelevant to the matter at hand.

We perceive no error on the part of the trial court in refusing to permit Sherry to depose or cross-examine the affiants. Similarly, we perceive no error on OOR's part to the extent that it relied upon the affidavits in rendering its final determination.[11]

Next, Sherry argues that the trial court erred as a matter of law in concluding that the requested documents were exempt as noncriminal investigation records under section 708(b)(17) of the RTKL and that release of the records/reports was precluded by FERPA. Again, we disagree.

Section 301(a) of the RTKL provides that "[a] Commonwealth agency shall provide public records in accordance with this act." 65 P.S. § 67.301(a). Section 305(a) of the RTKL states that records possessed by Commonwealth agencies are presumed to be public records, but that this "presumption shall not apply if: (1) the record is exempt under section 708; (2) the record is protected by a privilege; or (3) the record is exempt from disclosure under any other Federal or State law, regulation or judicial order or decree." 65 P.S. § 67.305(a). Pursuant to section 708(a)(1) of the RTKL, the "burden of proving that a record of a Commonwealth agency or local agency is exempt from public access shall be on the Commonwealth agency or local agency receiving a request by a preponderance of the evidence." 65 P.S. § 67.708(a)(1).

Section 708(b)(17) of the RTKL, specifically exempts the following from public disclosure:

A record of an agency relating to a noncriminal investigation, including:

(i) Complaints submitted to an agency.

(ii) Investigative materials, notes, correspondence and reports.

(iii) A record that includes the identity of a confidential source, including individuals subject to the act of December 12, 1986 (P.L. 1559, No. 169), known as the Whistleblower Law.

(iv) A record that includes information made confidential by law.

(v) Work papers underlying an audit.

(vi) A record that, if disclosed, would do any of the following:

(A) Reveal the institution, progress or result of an agency investigation, except the imposition of a fine or civil penalty, the suspension, modification or revocation of a license, permit, registration, certification or similar authorization issued by an agency or an executed settlement agreement unless the agreement is determined to be confidential by a court.

(B) Deprive a person of the right to an impartial adjudication.

(C) Constitute an unwarranted invasion of privacy.

(D) Hinder an agency's ability to secure an administrative or civil sanction.

(E) Endanger the life or physical safety of an individual.

65 P.S. § 67.708(b)(17).

Sherry argues that the District has failed to identify any specific investigation justifying the withholding of the requested documents and that the records/reports sought were nothing more than materials

---

11. We note that our conclusions above are limited to the facts of this case and are not supportive of a general principle that the use

of testimonial affidavits could never constitute an error of law or an abuse of discretion.

that exist in connection with the District's routine performance of its duties. Sherry relies on this Court's decision in *Legal Capital, LLC v. Medical Professional Liability Catastrophe Loss Fund*, 702 A.2d 869 (Pa.Cmwlth.1997), *affirmed*, 557 Pa. 10, 731 A.2d 132 (1999), for support. However, such reliance is misplaced.

*Legal Capital* involved a request to the Medical Professional Liability Catastrophe Loss Fund (CAT Fund) for access to records relating to the settlement of medical malpractice claims, including the names and addresses of all plaintiffs who have settled or compromised claims, the names and addresses of the plaintiffs' attorneys, the dates and amounts of the settlements, and any related docket numbers.[12] The CAT Fund denied the request, relying principally upon section 702(c) of the now-repealed Health Care Services Malpractice Act,[13] which deemed the CAT Fund's entire claim file to be confidential. The CAT Fund also relied upon the "investigation exception" under section 1(2) of the former RTKL,[14] which excluded from the definition of "public record" any report or other paper which would disclose the institution, progress, or result of an investigation undertaken by an agency in the performance of its official duties. While this Court ultimately affirmed the CAT Fund's denial under section 702(c) of the now-repealed Health Care Services Malpractice Act, we rejected the CAT Fund's reliance on the "investigation exception" of the former RTKL, noting that an agency's routine performance of its duties is not shielded from the RTKL.

However, this Court recently interpreted section 708(b)(17) of the current RTKL, stating as follows:

While Section 708(b)(17) clearly exempts from public disclosure 'record[s] of an agency relating to a noncriminal investigation,' the RTKL does not define 'noncriminal' or 'investigation.' It is well settled that, '[w]hen a statute fails to define a term, the term's ordinary usage applies.' *Educ. Mgmt. Servs. v. Dep't of Educ.*, 931 A.2d 820, 825–26 (Pa.Cmwlth. 2007). Moreover, '[d]ictionaries provide substantial evidence of a term's ordinary usage.' *Id.* We initially conclude that the use of the word 'noncriminal' in Section 708(b)(17) is intended to signal that the exemption is applicable to investigations other than those which are criminal in nature. This conclusion is supported by the fact that Section 708(b)(16) of the RTKL also exempts records 'relating to or resulting in a criminal investigation.' 65 P.S. § 67.708(b)(16). Thus, our inquiry here is focused on determining the meaning of the term 'investigation.' Black's Law Dictionary does not define the term 'investigation'; however, it defines the term 'investigate' as follows: '1. To inquire into (a matter) systematically; to make (a suspect) the subject of a criminal inquiry.... 2. To make an official inquiry....' Black's Law Dictionary 902 (9th ed.2009). Webster's Third New International Dictionary defines the term 'investigation' as follows: '1: the action or process of investigating: detailed examination ... 2. a searching inquiry: ... an official probe....' Webster's

---

12. The CAT Fund serves as a secondary insurer in medical malpractice cases to pay the excess, up to prescribed limits, over required basic insurance coverage for awards, judgments, and settlements in professional liability actions against health care providers.

13. Act of October 15, 1975, P.L. 390, *as amended*, 40 P.S. § 1301.702(c) (repealed 2002).

14. Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. § 66.1(2) (repealed 2008).

Third New International Dictionary 1189 (2002). Therefore, we conclude that, as used in Section 708(b)(17), the term 'investigation' means a systematic or searching inquiry, a detailed examination, or an official probe.

*Department of Health v. Office of Open Records,* 4 A.3d 803, 810–811 (Pa.Cmwlth. 2010).

In *Department of Health,* this Court also discussed the prior version of the RTKL, stating as follows:

> While the OOR places significance on the fact that the noncriminal investigation exemption under the RTKL no longer refers to investigations conducted as part of an agency's official duties, like the investigation exception under the Prior Law did, we do not believe that the General Assembly's actions in leaving this language out of the RTKL is particularly meaningful. Agencies are creatures of statute and, thus, only have the authority to act pursuant to their official duties as established by their enabling legislation. *Mazza v. [Department of Transportation,] Bureau of Driver Licensing,* 692 A.2d 251, 252 (Pa. Cmwlth.1997). As such, in order for an agency to conduct any type of investigation, the investigation would necessarily be a part of the agency's official duties.

Therefore, the General Assembly likely deemed it unnecessary to retain language referring to an agency's official duties in the noncriminal investigation exemption.

*Id.* at 814.

■ In the present case, Sherry sought certain records of Honor Code violations maintained by the District. Certainly, these records are noncriminal in nature. Additionally, these records surpass the District's routine performance of its duties and entail a systematic or searching inquiry, detailed examination, and/or official probe into purported student rule violations on the District's premises. Moreover, our conclusion in this regard is supported by this Court's recent decision in *Pennsylvania State Police v. Office of Open Records,* 5 A.3d 473 (Pa.Cmwlth. 2010), which involved a similar exemption relating to criminal investigation records under section 708(b)(16) the RTKL, 65 P.S. § 67.708(b)(16).[15]

In *Pennsylvania State Police,* the requester, a managing editor of a local newspaper, sought a specific incident report from the Pennsylvania State Police (PSP). PSP denied the request, citing section 708(b)(16) of the RTKL. OOR subsequently granted requester's appeal and directed PSP to release the incident report. This

---

**15.** Section 708(b)(16) provides an exemption for the following records relating to or resulting in a criminal investigation:

(i) Complaints of potential criminal conduct other than a private criminal complaint.

(ii) Investigative materials, notes, correspondence, videos and reports.

(iii) A record that includes the identity of a confidential source or the identity of a suspect who has not been charged with an offense to whom confidentiality has been promised.

(iv) A record that includes information made confidential by law or court order.

(v) Victim information, including any information that would jeopardize the safety of the victim.

(vi) A record that, if disclosed, would do any of the following:

(A) Reveal the institution, progress or result of a criminal investigation, except the filing of criminal charges.

(B) Deprive a person of the right to a fair trial or an impartial adjudication.

(C) Impair the ability to locate a defendant or codefendant.

(D) Hinder an agency's ability to secure an arrest, prosecution or conviction.

(E) Endanger the life or physical safety of an individual.

Court reversed OOR's final determination, concluding that the incident report was in fact exempt as a criminal investigative record. The following description of the incident report is particularly relevant to the present matter:

The Incident Report, itself, contains notes of interviews with the alleged victims/perpetrators, as well as another witness. The form on which the Incident Report is written contains checkboxes regarding whether certain investigative tasks have been carried out or whether certain information was discovered. All of these boxes were checked in the Incident Report, either 'yes' or 'no.' The above information was assembled as a result of an investigation into a criminal incident or an allegation of criminal wrongdoing.

*Pennsylvania State Police,* 5 A.3d at 479. The reports requested herein are similar to these incident reports, i.e., they are forms upon which violations are noted and contain a description of the violative conduct, witness/teacher statements, and the course and result of the investigation. Thus, the trial court did not err as a matter of law in concluding that the requested documents were exempt as noncriminal investigation records under section 708(b)(17) of the RTKL.

■ Furthermore, the records requested in this case are exempt from disclosure under FERPA and section 305(a)(3) of the RTKL. FERPA is a federal statute addressing the conditions for availability of funds to educational agencies or institutions.[16] Section 1232g(b)(1) of FERPA provides that "[n]o funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of educational records (or personally identifiable information contained therein other than directory information, as defined in paragraph (5) of subsection (a)) of students without the written consent of their parents...." 20 U.S.C. § 1232g(b)(1). Section 1232g(a)(4)(A) defines "education records" as "those records, files, documents, and other materials which—(i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A).

Section 1232g(a)(5)(A) defines "directory information" as "the student's name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, and the most recent previous educational agency or institution attended by the student." While section 1232g does not define "personally identifiable information," this term is defined in the FERPA regulations as including, but not limited to, the following:

(a) The student's name;

(b) The name of the student's parent or other family members;

(c) The address of the student or student's family;

(d) A personal identifier, such as the student's social security number, student number, or biometric record;

(e) Other indirect identifiers, such as the student's date of birth, place of birth, and mother's maiden name;

---

**16.** The regulations of the state Department of Education (Department) provide that the governing board of every school shall adopt a plan for the collection, maintenance, and dissemination of pupil records, that the plan must be submitted to the Department for approval, and that the plan's policies with respect to pupil records must be consistent with the minimum requirements of FERPA. 22 Pa.Code §§ 12.31, 12.32.

(f) Other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; or

(g) Information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates.

34 C.F.R. § 99.3. Moreover, FERPA has been described as an act designed to protect parents' and students' right to privacy by limiting the transferability of records without consent. *United States v. Miami University*, 294 F.3d 797 (6th Cir.2002). The court in *Miami University* specifically held that student disciplinary records are included under FERPA's definition of "education records."

Sherry contends that FERPA is inapplicable to the present matter because the requested reports are de-identified and distributed to each member of the Honor Council in violation of FERPA. We disagree. Even if we assumed, for the sake of argument, that the District is in violation of FERPA by providing the reports to the Honor Council, such violation does not compel disclosure of an otherwise exempt record. Moreover, both Principal Schellenger and Mr. Rosin indicated in their respective affidavits that the de-identified reports still contained elements which could be used to identify the student involved. FERPA precludes the release of "personally identifiable information," which the regulations define as including "[o]ther information that, alone or in combination, is linked or linkable to a specific student...." 34 C.F.R. § 99.3(f). Thus, the trial court did not err as a matter of law in concluding that the release of the requested reports was precluded by FERPA and section 305(a)(3) of the RTKL.

Accordingly, the orders of the trial court are affirmed.

## ORDER

AND NOW, this 4th day of April, 2011, the January 20, 2010, orders of the Court of Common Pleas of Delaware County are hereby affirmed.