2024 IL App (1st) 221414
Opinion filed September 19, 2024

Fourth Division

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| BETTER GOVERNMENT ASSOCIATION, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CH 09964 |
| | ) | |
| CITY COLLEGES OF CHICAGO, | ) | Honorable |
| | ) | Eve M. Reilly, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court, with opinion.
Justices Mitchell and Mikva concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Better Government Association (BGA) submitted a request pursuant to the Freedom of Information Act (FOIA) (5 ILCS 140/1 to 11.6 (West 2018)) to defendant City Colleges of Chicago (City Colleges) for, *inter alia*, education records related to City Colleges' graduation rate. City Colleges refused to turn over the records, asserting that the records sought were exempted from disclosure under section 7(1)(a) of FOIA (*id.* § 7(1)(a)) and pursuant to the Family Educational Rights and Privacy Act of 1974 (FERPA) (20 U.S.C. § 1232g (2012)). The circuit court disagreed and granted summary judgment in favor of BGA, finding that the records

were not exempt from FOIA because FERPA did not "specifically prohibit" the release of such records, instead only conditioning the receipt of federal funding on compliance with the statute.

¶ 2   On appeal, City Colleges contends that FERPA operates as a prohibition on the disclosure of the student education records sought by BGA to which the exemption in section 7(1)(a) of FOIA applies. City Colleges maintains that the circuit court's "hyper-literal" reading of FOIA would create an absurd result that would force City Colleges to violate FERPA and therefore risk losing its federal funding, which is essential to the operation of its colleges. City Colleges maintains that to the extent we find any conflict between FOIA and FERPA, the mandates of FOIA must yield to the federal statute. For the reasons that follow, we reverse the judgment of the circuit court and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4   This case concerns the interaction of two statutes. The first is Illinois's FOIA statute, which establishes that "[a]ll records in the custody or possession of a public body are presumed to be open to inspection or copying." 5 ILCS 140/1.2 (West 2018). Section 7 of FOIA provides exemptions to that presumption, such as when information is "specifically prohibited from disclosure by federal or State law or rules and regulations implementing federal or State law." *Id.* § 7(1)(a).

¶ 5   The second statute involved in this case is FERPA (20 U.S.C. § 1232g), which sets forth the conditions for the availability of federal funds to educational agencies or institutions. As relevant here, section (b)(1) of FERPA provides that

     "[n]o funds shall be made available under any applicable program to any educational

     agency or institution which has a policy or practice of permitting the release of education

     records (or personally identifiable information contained therein other than directory

information, as defined in paragraph (5) of subsection (a) of this section) of students without the written consent of their parents to any individual, agency, or organization ***."

*Id.* § 1232g(b)(1).

¶ 6    On July 9, 2018, BGA submitted a four-part FOIA request to City Colleges, seeking various records, statistics, documents, and data regarding City Colleges' graduation rate in 2018. City Colleges, as a public body, is subject to the disclosure requirements of FOIA. 5 ILCS 140/2(a) (West 2018); *City of Champaign v. Madigan*, 2013 IL App (4th) 120662, ¶ 33. Only part two of BGA's FOIA request is at issue in this appeal. That request sought: "Data regarding completed course work and curriculum for each of the graduates in the cohort counted toward the 2018 graduation rate. This request includes, but is not necessarily limited to, each course completed, the date of completion, credit hours earned, grade and degree." City Colleges initially sought extensions to respond to the request, but thereafter failed to respond, prompting BGA to file this suit.

¶ 7    BGA filed its complaint on August 6, 2018, to "overturn" City College's refusal to produce data about its graduation rate, pursuant to FOIA. In its complaint, BGA alleged that City Colleges willfully violated FOIA by refusing to produce the requested records. BGA sought an order declaring that City Colleges violated FOIA and requiring it to produce the requested records.

¶ 8    City Colleges filed an answer and affirmative defenses to BGA's complaint, contending that it had redacted and withheld certain information from the requested records pursuant to section 7(1)(a) of FOIA (5 ILCS 140/7(1)(a) (West 2018)) because the information was exempt from disclosure by federal or state law.

¶ 9    At BGA's request, City Colleges produced an index detailing each redacted or withheld record. City Colleges maintained that the records were redacted pursuant to FERPA and section

7(1)(a) of FOIA. City Colleges asserted that the redacted information included personally identifiable information, which could not be released without written consent from the students or their parents or guardians. City Colleges contended that even if it attempted to remove the identities of the students within the requested information, the records would still contain "indirect identifiers" that could be utilized to ascertain the identity of students in violation of FERPA.

¶ 10    BGA filed an amended complaint alleging that City Colleges "improperly" redacted and withheld the requested records and then filed a motion for partial summary judgment. In its motion, BGA sought the release of records that it claimed would allow it to assess the accuracy of City Colleges' published graduation rate data. BGA maintained that, under FOIA, City Colleges has the burden to prove that the withheld information was exempted by statute. BGA asserted that City Colleges failed to meet this burden because it cited generally to the FERPA statute as a whole and made only conclusory arguments that the data could be used to somehow indirectly identify students.

¶ 11    BGA further contended that City Colleges failed to establish that FERPA "specifically prohibits" the release of the requested information, as required by section 7(1)(a) of FOIA. BGA acknowledged that no Illinois courts have addressed this issue but asserted that courts in other jurisdictions have found that FERPA merely conditions the receipt of federal funds on compliance with the statute but does not specifically prohibit the release of any information.

¶ 12    In response, City Colleges contended that it sufficiently complied with BGA's FOIA request while maintaining compliance with FERPA by protecting student data. City Colleges challenged BGA's assertion that FERPA did not prohibit the release of students' education records, asserting that the plain language of the statute operates as a prohibition by tying compliance to federal funding. City Colleges pointed out that the United States District Court for

the Northern District of Illinois addressed this very issue in *Marcial v. Rush University Medical Center*, No. 16-cv-6109, 2018 WL 4144634 (N.D. Ill. Aug. 30, 2018) and found that FERPA prohibits educational institutions from releasing identification information in a student's record without their consent.

¶ 13    City Colleges maintained that BGA's narrow reading of section 7(1)(a) of FOIA that a statute must specifically prohibit the release of information was rejected by the United States Court of Appeals for the Seventh Circuit in *Chicago Tribune Co. v. Board of Trustees of the University of Illinois*, 680 F.3d 1001 (7th Cir. 2012). City Colleges contended that, under this precedent and the plain language of FERPA, it could release the information BGA sought pursuant to the FOIA request only if it obtained written consent from the parents or guardians (or the students themselves if they were over the age of 18) of its 8000-student graduating class. City Colleges asserted that such a procedure was not practical, and it was therefore forced to either comply with the FOIA request and risk losing its federal funding pursuant to FERPA or to redact or withhold the exempted records.

¶ 14    In reply, BGA asserted that City Colleges was improperly interpreting FERPA in order to withhold public records. BGA contended that FERPA does not specifically prohibit disclosure and that City Colleges failed to adequately support its contention that the "de-identified" records would still contain " 'indirect identifiers.' " BGA cited to other courts' interpretations of FERPA that it was a funding statute that does not prohibit the release of education records. See *Bauer v. Kincaid*, 759 F. Supp. 575, 589 (W.D. Mo. 1991); *WFTV, Inc. v. School Board of Seminole*, 874 So. 2d 48, 57 (Fla. Dist. Ct. App. 2004). BGA maintained that it was not seeking "personally identifiable information," as that phrase was used in FERPA, but only sought "de-identified" data. BGA contended that the authority cited by City Colleges was inapplicable because in those cases, the

party seeking the data sought personally identifiable information. BGA asserted that City Colleges could withhold the information if it could demonstrate by affidavit that a student could still be identified even if the personally identifiable information was redacted. BGA pointed out that City Colleges failed to submit an affidavit to that effect and therefore failed to meet its burden.

¶ 15    Following a hearing, the circuit court found that there were no questions of fact. The court determined that the only issue was whether the exemption in section 7(1)(a) of FOIA applied. The court agreed with the "case law that says [FERPA] is a funding statute" that does not specifically prohibit the disclosure of student education data. The court noted that it prohibits disclosure "if you want funding. It is not the same." The court therefore granted BGA's motion for partial summary judgment with regard to part 2 of its FOIA request. The court did not address the issue of "de-identified" records. The court subsequently entered a stay of the enforcement of its ruling. Following the court's final ruling on BGA's other FOIA requests, City Colleges appealed from the circuit court's grant of summary judgment finding that the education records BGA sought in part 2 of its FOIA request were not exempt from disclosure. We find that we have jurisdiction to consider the merits of this appeal pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303(a) (eff. July 1, 2017).

¶ 16                                      II. ANALYSIS

¶ 17    On appeal, City Colleges contends that the circuit court erred in granting summary judgment in favor of BGA where FERPA operates as a prohibition on the disclosure of student records to which the exemption in section 7(1)(a) of FOIA applies. City Colleges maintains that the circuit court incorrectly adopted BGA's "hyper-literal" interpretation of section 7(1)(a), finding that the exemption applies only if the statute at issue "specifically prohibits" the release of

the requested records. City Colleges further contends that it is bound by FERPA's confidentiality provisions as a matter of federal law because it has accepted federal funds.

¶ 18                                    A. Standard of Review

¶ 19    Section 2-1005 of the Code of Civil Procedure governs motions for summary judgment. 735 ILCS 5/2-1005 (West 2018).

> "[S]ummary judgment should be granted only where the pleadings, depositions, admissions and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to judgment as a matter of law." (Internal quotation marks omitted.) *International Ass'n of Fire Fighters, Local 50 v. City of Peoria*, 2022 IL 127040, ¶ 10.

Our review of the trial court's grant of summary judgment is *de novo*. *Perry v. Department of Financial & Professional Regulation*, 2018 IL 122349, ¶ 30. *De novo* review is also appropriate to the extent that this case turns on issues of statutory construction. *Id.*

¶ 20                                    B. FOIA

¶ 21    Before we may address the parties' arguments, we must first clarify how this court interprets FOIA and its exemptions. The fundamental tenet of statutory interpretation is to ascertain and give effect to the intent of the legislature. *Ryan v. Board of Trustees of the General Assembly Retirement System*, 236 Ill. 2d 315, 319 (2010). The most reliable indicator of that intent is the plain language of the statute itself. *Id.* In this case, sections 1 and 1.2 of FOIA expressly declare the statute's public policy and the legislature's intent. *Calloway v. Chicago Police Department*, 2022 IL App (1st) 210090, ¶ 15.

¶ 22    Section 1 provides that

> "it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act." 5 ILCS 140/1 (West 2018).

That section further states that "[s]uch access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest." *Id.* Section 1.2 of FOIA provides that "[a]ll records in the custody or possession of a public body are presumed to be open to inspection or copying. Any public body that asserts that a record is exempt from disclosure has the burden of proving by clear and convincing evidence that it is exempt." *Id.* § 1.2.

¶ 23 Section 7 of FOIA provides specific exemptions from disclosure. *Calloway*, 2022 IL App (1st) 210090, ¶ 16 (citing 5 ILCS 140/7 (West 2020), and quoting 5 ILCS 140/3(a) (West 2020) (" 'Each public body shall make available to any person for inspection or copying all public records, except as otherwise provided in Sections 7 and 8.5 of this Act.' ")). As noted, section 7(1)(a) exempts from disclosure: "Information *specifically prohibited* from disclosure by federal or State law or rules and regulations implementing federal or State law." (Emphasis added.) 5 ILCS 140/7(1)(a) (West 2018). In examining section 7(1)(a) of FOIA, the second district of this court has observed:

> "[E]ven if a statute does not specifically provide that records are exempt from disclosure under [the Act] or otherwise contain an explicit prohibition against public disclosure, records are nevertheless exempt 'where the plain language contained in a State or federal statute reveals that public access to the records was not intended.' [Citation.] On the other hand, section 7(1)(a) does not apply 'where a State or federal statute is ambiguous or silent

in regard to the disclosure of public records.' [Citation.]" *Better Government Ass'n v. Zaruba*, 2014 IL App (2d) 140071, ¶ 21.

See *In re Appointment of Special Prosecutor*, 2017 IL App (1st) 161376, ¶ 50 (" '[R]ecords are exempt from disclosure under [FOIA] in instances where the plain language contained in a state or federal statute reveals that public access to the records was not intended' " (quoting *Kibort v. Westrom*, 371 Ill. App. 3d 247, 256 (2007), and citing *Zaruba*, 2014 IL App (2d) 140071, ¶ 29)).

¶ 24                                    C. FOIA 7(1)(a) and FERPA

¶ 25    With these principles in mind, the central question at issue in this appeal is whether FERPA "specifically prohibits," as that phrase is used in section 7(1)(a) of FOIA, the release of the education records BGA sought in part 2 of its FOIA request, such that the records are exempt from disclosure. As the parties noted before the circuit court, no Illinois state court has addressed this issue. However, because FERPA is a federal statute, and many states have open records acts that are similar to our FOIA statute, there are a number of state and federal court decisions from other jurisdictions that have addressed this issue in situations comparable to the case at bar.

¶ 26    City Colleges primarily relies on the United States Court of Appeals for the Sixth Circuit's decision in *United States v. Miami University*, 294 F.3d 797 (6th Cir. 2002), in support of its contention that FERPA prohibits the release of education records. In *Miami University*, the editors of Miami University's student newspaper sought student disciplinary records from the university to track crime trends on campus. *Id.* at 803 (citing *State ex rel. Miami Student v. Miami University*, 680 N.E.2d 956, 957 (Ohio 1997)). Miami University initially refused the request, but later released the records after the editor made a request pursuant to the Ohio Public Records Act (Ohio Rev. Code Ann. § 149.43 (West 2024)). *Miami University*, 294 F.3d at 803. Pursuant to FERPA, the university redacted the records, removing " the identity, sex, and age of the accuseds [sic], as

well as the date, time and location of the incidents giving rise to the disciplinary charges." (Internal quotation marks omitted.) *Id.* The editors, dissatisfied with the redactions, filed a mandamus action in the Ohio Supreme Court, seeking full disclosure of the records with the only redactions being the " name, social security number, or student I.D. number of any accused or convicted party." (Internal quotation marks omitted.) *Id.* The Ohio Supreme Court ordered the university to release the unredacted records, holding that disciplinary records were not "education records" as defined in FERPA. *Id.*

¶ 27 Following that decision, The Chronicle, a national weekly newspaper, made requests to Miami University and Ohio State University under the Ohio Public Records Act for student disciplinary records with minimal redactions because the records were not covered by FERPA. *Id.* at 804. The United States Department of Education informed the universities that it believed the Ohio Supreme Court was incorrect when it found that student disciplinary records were not "education records" under FERPA. *Id.* Both universities complied with The Chronicle's request, prompting the United States to file a complaint seeking declaratory and injunctive relief against the universities, prohibiting the universities from releasing student disciplinary records that contained personally identifiable information, except as permitted under FERPA. *Id.* The district court held that the student disciplinary records were education records and enjoined the universities from releasing the records. *Id.* at 805.

¶ 28 On appeal to the Sixth Circuit, one of the issues raised was whether the district court erred in rejecting the Ohio Supreme Court's holding that student disciplinary records were not education records, such that FERPA did not prohibit their disclosure. *Id.* at 810. Like Illinois's FOIA, the Ohio Open Records Act contains an exemption for records "the release of which is prohibited by state or federal law." (Internal quotation marks omitted.) *Id.* (quoting *Miami Student*, 680 N.E.2d

at 958, quoting Ohio Rev. Code Ann. § 149.43(A)(1)(v) (West 2024)). The Sixth Circuit observed, however, that the Ohio Supreme Court never reached the issue of whether FERPA prohibited the release of records. *Id.* Instead, the Ohio Supreme Court "misinterpreted" FERPA and "erroneously conclude[ed] that student disciplinary records were not 'education records' as defined by the FERPA." *Id.* The Sixth Circuit declined to speculate about how the Ohio Supreme Court would resolve the issue of whether FERPA prohibited disclosure of education records. *Id.* Nonetheless, the Sixth Circuit noted that whether the release of a particular record is prohibited by federal law implicates the interpretation of federal law, not state law, such as the Ohio Public Records Act. *Id.* The court found that there was no conflict between the Ohio Public Records Act and FERPA because the Ohio Public Records Act specifically excluded from disclosure the release of records prohibited by federal law. *Id.* at 811. The court noted that despite the Ohio Supreme Court's erroneous conclusion about whether the student disciplinary records were education records, the holding in that case did not create a conflict with FERPA because the editors sought significantly redacted records consistent with FERPA. *Id.* In contrast, The Chronicle sought virtually unredacted records "fraught with personally identifiable information." *Id.* The court concluded that FERPA would not prevent The Chronicle from requesting records that had been properly redacted under FERPA. *Id.* at 824.

¶ 29    Thus, *Miami University* stands for the proposition that FERPA prohibits the disclosure of education records unless the records are redacted to remove personally identifiable information as required by FERPA. City Colleges also identifies several other cases that it contends support its proposition that FERPA prohibits the release of education records. See, *e.g.*, *Marcial*, 2018 WL 4144634; *Student Press Law Center v. Alexander*, 778 F. Supp. 1227 (D.D.C. 1991); and *Belanger v. Nashua, New Hampshire, School District*, 856 F. Supp. 40 (D.N.H. 1994).

¶ 30    On the other hand, BGA primarily relies on *Bauer*, 759 F. Supp. 575, a case from the United States District Court for the Western District of Missouri, in support of its contention that FERPA does not specifically prohibit the release of education records. In *Bauer*, the plaintiff, a student at Southwest Missouri State University (SMSU), sought "verbatim" copies of incident reports related to on-campus crime from the university. *Id.* at 576-77. SMSU claimed that it was prohibited from releasing the records pursuant to FERPA. *Id.* at 577-78. The plaintiff asserted that the campus security reports were not education records under FERPA and that the provisions of FERPA were not "mandatory." *Id.* at 581. At issue in *Bauer* was the interaction between FERPA and the Missouri Open Records Act (Mo. Ann. Stat. § 610 *et seq.* (West 2004)) or the Missouri "Sunshine Law." *Bauer*, 759 F. Supp. at 581. The Missouri Open Records Act provided that " '[i]t is the public policy of this state that meetings, records, votes, actions and deliberations of public governmental bodies be open to the public, unless otherwise provided by law.' " *Id.* (quoting Mo. Ann. Stat. § 610.011 (West 2004)). The Missouri Open Records Act further authorized "closure" for " 'Records which are protected from disclosure by law . . .' " *Id.* at 587 (quoting Mo. Ann. Stat. § 610.021(14) (West 2004)).

¶ 31    SMSU contended that FERPA provided "protection" for the requested records, even if it did not specifically " 'prohibit[ ]' " disclosure. *Id.* In addressing FERPA, the *Bauer* court stated that:

> "FERPA is not a law which prohibits disclosure of educational records. It is a provision which imposes a penalty for the disclosure of educational records. [*Student Bar Ass'n Board of Governors v. Byrd*, 239 S.E.2d 415 (N.C. 1977)] stated that the Buckley amendment (FERPA) does not forbid disclosure of information concerning a student. FERPA provides for the withholding of federal funds otherwise available to an educational

institution which has a policy or practice of permitting the release of educational records."

*Id.* at 589.

The court continued that "FERPA protects as confidential, information which a student is required to produce or divulge in conjunction with application and attendance at an educational institution. FERPA also protects academic data generated while an individual is a student at an educational institution." *Id.* at 590. The court found, however, that the criminal investigation and incident reports that the plaintiff sought were not the type of records that FERPA expressly protects. *Id.*

"Criminal investigation reports are specifically excluded from the educational records which FERPA protects. Criminal investigation and incident reports do not contain the same type of information which a student is required to submit as a precondition to enrollment or attendance, nor is this type of information created in the natural course of an individual's status as a student.

The fact that the statute specifically exempts records maintained for law enforcement purposes demonstrates that Congress did not intend to treat criminal investigation and incident reports as educational records. The underlying purpose of FERPA was not to grant individual students a right to privacy or access to educational records, but to stem the growing policy of many institutions to carelessly release educational information." *Id.*

¶ 32 Like City Colleges, BGA also identifies a number of other cases that it maintains supports its position. See, *e.g.*, *WFTV*, 874 So. 2d at 57; *University of Kentucky v. Kernel Press, Inc.*, 620 S.W.3d 43, 56-57 (Ky. 2021); and *Doe v. Rutgers*, 245 A.3d 261 (N.J. Super. Ct. App. Div. 2021).

¶ 33 As a result of these seemingly disparate decision, some courts have observed that there is no consensus on whether FERPA "prohibits" the release of education records. In *Press-Citizen*

*Co. v. University of Iowa*, 817 N.W.2d 480, 486 (Iowa 2012), the Iowa Supreme Court noted the jurisdictional divide on this issue when examining the interplay between FERPA's and the state's open records act. The court listed *Bauer*, *WFTV*, and *Kirwan v. The Diamondback*, 721 A.2d 196,206 (Md. 1998) as cases that found FERPA did not prohibit the disclosure of education records. *Press-Citizen*, 817 N.W.2d at 486-87. On the other hand, the court identified *Miami University*, *Sherry v. Radnor Township School District*, 20 A.3d 515, 525 (Pa. Cmmw. Ct. 2011), and *Rim of the World Unified School District v. Superior Court of San Bernardino County*, 129 Cal. Rptr. 2d 11, 15 (Ct. App. 2002) as cases that held that FERPA prohibited the disclosure of education records. *Press-Citizen*, 817 N.W.2d at 487. The Iowa Supreme Court determined, however, that it did not need to address the controversy because the Iowa Open Records Act (Iowa Code § 22.1 *et seq.* (2024)) already gave priority to FERPA. *Press-Citizen*, 817 N.W.2d at 487. The court noted that the Iowa Open Records Act provided an exception for a provision that would cause a denial of federal funds to a state agency. *Id.* at 487-88.

¶ 34    *Press-Citizen* is not the only case to wade into the interaction between FERPA and a state open records act or FOIA-equivalent statute, note the numerous conflicting decisions, and then resolve the issue based on an exception in the state's open records act. In *Caledonian-Record Publishing Co. v. Vermont State College*, 2003 VT 78, ¶ 1, 175 Vt. 438, 833 A.2d 1273, a newspaper sought access to student disciplinary records at the defendant universities. The Vermont Open Meeting Law (Vt. Stat. Ann. tit. 1, § 311 (West 1980)) and Public Records Act (Vt. Stat. Ann. tit. 1, § 315 (West 2017)) exempted from disclosure records and proceedings " 'made confidential by the laws of the United States.' " *Caledonian-Record Publishing Co.*, 2003 VT 78, ¶ 7, 175 Vt. 438, 833 A.2d 1273 (quoting Vt. Stat. Ann. tit. 1, § 312(e) (West 2016)). The Vermont Supreme Court noted that "state and federal courts are sharply divided" on

the issue of whether FERPA makes education records exempt from disclosure. *Id.* (collecting cases). The Vermont Supreme Court found it "unnecessary" to resolve this division, however, because the Vermont Public Records Act had an express exception for "student records." *Id.* ¶ 9.

¶ 35 Illinois's FOIA does not contain exemptions that are similar to the exclusions found dispositive in *Press-Citizen* and *Caledonian-Record*. Nonetheless, we find that the exemption in section 7(1)(a) of FOIA operates to exempt the requested records from disclosure in this case. A review of the precedent cited above demonstrates that even authority that BGA and other courts claim have found that FERPA does not "specifically prohibit" the release of education records have nonetheless recognized that FERPA was intended to protect these records—specifically, records that contain personally identifiable information. For instance, in *Bauer*, despite stating that FERPA did not "prohibit[ ]" or "forbid" the disclosure of education records, the court nonetheless observed that FERPA was intended to "protect[ ]" certain student education records, such as "academic data generated while an individual is a student at an educational institution." *Bauer*, 759 F. Supp. at 589-90. Similarly, in *WFTV*, although the court stated that "FERPA *does not prohibit the* disclosure of any educational records," it recognized that FERPA *does* "prohibit[ ] the disclosure of any personally identifiable information in education records." (Emphasis in original.) *WFTV*, 874 So. 2d at 57. The *WFTV* court stated twice more that FERPA "prohibits" and "protect[s]" the release of personally identifiable information contained in education records. *Id.* at 57-58.

¶ 36 In *Kirwan*, the court stated that FERPA "was not intended to preclude the release of any record simply because the record contained the name of a student. The federal statute was obviously *intended to keep private* those aspects of a student's educational life that relate to

academic matters or status as a student." (Emphasis added.) *Kirwan*, 721 A.2d at 204.[1] In *Kernel Press*, despite noting that FERPA was a "funding statute," the court nevertheless stated that "FERPA aims to *protect* the privacy of student education records and to *prohibit* educational institutions from disclosing personally identifiable information in those records." (Emphases added.) *Kerneal Press*, 620 S.W.3d at 56, 58. Finally, in *Doe*, the issue was whether the plaintiff could access his own education records. *Doe*, 245 A.3d at 268. The court found that this type of disclosure was not prohibited under FERPA; however, it recognized the defendant university's responsibility to protect the personally identifiable information of its other students in releasing the requested records to the plaintiff. *Id.* at 268-270 ("[W]e are fully cognizant of defendants' *need* to maintain and implement system-wide protocols under FERPA to *safeguard* confidentiality of its students' records." (Emphases added.)).

¶ 37    Thus, these decisions seem to simultaneously hold that FERPA both does and does not prohibit the release of education records. However, such an interpretation misses a key distinction; a distinction that was overlooked by both the circuit court in this case and BGA. The focus is not on the education records themselves, but the information contained in those education records. FERPA does not prohibit the release of all education records in all circumstances. However, it does prohibit the release of personally identifiable information in education records without the consent of the students or their guardians. See *Marcial*, 2018 WL 4144634, at *5 ("FERPA *prohibits* educational institutions from releasing identification information in a student's record without their written consent."); *Sherry*, 20 A.3d at 525 ("FERPA *precludes* the release of

---

[1]We note that the court in *Kirwan* found that the records at issue were not "education records" under FERPA and therefore declined to address the issue of whether FERPA "directly prohibit[ed]" the disclosure of protected education records where the only "enforcement mechanism" was the withholding of funds. *Kirwan*, 721 A.2d at 206.

'personally identifiable information' ***." (Emphasis added.)). Whether we choose to use the language of the *Kirwan* court of "keep private," the language of the *Bauer* court of "protect," or the language of the *Doe* court to "safeguard," it is clear that, under FERPA and FOIA, public access to education records that contain personally identifiable information of a student "was not intended." (Internal quotation marks omitted.) *Zaruba*, 2014 IL App (2d) 140071, ¶ 21; *In re Appointment of Special Prosecutor*, 2017 IL App (1st) 161376, ¶ 50.

¶ 38    Based on this precedent, the circuit court's ruling here that a complete loss of federal funding for institutions that violate FERPA does not amount to a "specific prohibition" under section 7(1)(a) of FOIA is unreasonable. The court's implication that City Colleges could simply choose to comply with the FOIA request, violate FERPA, and forgo its federal funding is "unrealistic and disingenuous." *Student Press*, 778 F. Supp. at 1232 n. 13. City Colleges depends on federal funding to maintain its operations, receiving approximately 32%—almost $90 million— of its total revenue in the 2018 fiscal year from federal funds. FERPA provides that educational institutions that accept federal funding will lose that funding if they violate FERPA's privacy requirements. 20 U.S.C. § 1232g(a)(3). "FERPA imposes a *binding obligation* on schools that accept federal funds." (Emphasis added.) *Miami University*, 294 F.3d at 809 n.11. "Once the conditions and the funds are accepted, the school is indeed prohibited from systematically releasing education records without consent." *Id.* at 809; see *Chicago Tribune Co.*, 680 F.3d at 1001, 1004 (2012) ("The most one can say about [FERPA] is that, *if* a state takes the money, *then* it must honor the conditions of the grant, including nondisclosure." (Emphases in original.)); *Owasso Independent School District, No. I-011 v. Falvo*, 534 U.S. 426, 428 (2002) ("Under FERPA, schools and educational agencies receiving federal financial assistance must comply with certain conditions. [Citation.] One condition specified in [FERPA] is that sensitive information

about students may not be released without parental consent."). City Colleges, having accepted federal funding, was therefore prohibited from releasing students' personally identifiable information without consent.

¶ 39    The Ohio Supreme Court reached the same conclusion in *State ex rel. ESPN, Inc. v. Ohio State University*, 132 Ohio St. 3d 212, 2012-Ohio-2690, 970 N.E.2d 939, when examining FERPA's privacy mandates in the context of a disclosure exemption in the Ohio Public Records Act that was similar to the exemption in section 7(1)(a) of FOIA. In that case, ESPN, Inc. (ESPN) sought records from the Ohio State University (Ohio State) under the state's Public Records Act. *Id.* ¶ 1. Ohio State maintained that certain records were exempt from disclosure under FERPA because the state's Public Records Act exempted from the definition of "public record" records " ' "the release of which is prohibited by state or federal law." ' " *Id.* ¶ 16 (quoting *State ex rel. Dawson v. Bloom-Carroll Local School District*, 131 Ohio St. 3d 10, 2011-Ohio-6009, 959 N.E.2d 524, ¶ 27, quoting Ohio Rev. Code Ann. § 149.43(A)(1)(v) (West 2024)). ESPN argued that FERPA did not prohibit the disclosure of the requested records, but merely penalized educational institutions that released the records by withholding federal funding. *Id.* ¶ 20. In a *per curiam* decision, the Ohio Supreme Court rejected this argument, finding that Ohio State was bound by FERPA's terms because it had accepted federal funding. *Id.* ¶ 23. "Therefore, Ohio State, having agreed to the conditions and accepted the federal funds, was *prohibited* by FERPA from systematically releasing education records without parental consent." (Emphasis added.) *Id.* "FERPA *** does constitute a prohibition on the release of records under" the exemption in section 149.43(A)(1)(v) of the Ohio Public Records Act (Ohio Rev. Ann. § 149.43(A)(1)(v) (West 2024)). *ESPN*, 132 Ohio St. 3d 212, 2012-Ohio-2690, 970 N.E.2d 939, ¶ 25. The court found that

Ohio State could provide ESPN access to these records after they were redacted to comply with FERPA. *Id.* ¶ 34-35.

¶ 40    In the case at bar, the circuit court's summary judgment order required City Colleges to release education records in response to part 2 of BGA's FOIA request. This request sought "[d]ata regarding completed course work and curriculum for each of the graduates in the cohort counted toward the 2018 graduation rate. This request includes, but is not necessarily limited to, each course completed, the date of completion, credit hours earned, grade and degree." The court's order did not contemplate any redaction of the records, despite City Colleges' assertions that the records contained FERPA-protected information. The court did not review the records *in camera* to determine whether redaction was necessary or how the records could be redacted to remove personally identifiable information. "Redaction of FERPA-protected education records is commonplace." *Kernel Press*, 620 S.W.3d at 57. In order to ensure the redactions would protect the privacy interests involved, it is proper for the circuit court to conduct an *in camera* inspection of the records. *Krakauer v. State*, 2016 MT 230, ¶ 39, 384 Mont. 527, 381 P.3d 524. The circuit court's holding here, made without reviewing the records and ordering redactions to comply with FERPA and FOIA, must therefore be reversed where there was no assurance that the records did not contain personally identifiable student information. Accordingly, we find that under section 7(1)(a) of FOIA, the disclosure of the requested unredacted records was not intended by FERPA and the circuit court erred in granting summary judgment in favor of BGA.

¶ 41                    D. Redaction of Personally Identifiable Information

¶ 42    This finding does not end our inquiry, however. BGA contends, as an alternative grounds for affirmance, that it is seeking only "de-identified" records, which are not protected by FERPA. Indeed, the regulations adopted by the United States Department of Education to implement

FERPA specifically provide that an educational agency or institution may disclose education records without consent "after the removal of all personally identifiable information provided that the educational agency or institution or other party has made a reasonable determination that a student's identity is not personally identifiable, whether through single or multiple releases, and taking into account other reasonably available information." 34 C.F.R. § 99.31(b)(1) (2011). However, we find that may not affirm the circuit court's judgment on this alternative argument that was not addressed by the circuit court. Although it is true that we may affirm the judgment of the circuit court on any basis appearing in the record, regardless of whether the circuit court relied on that ground (*Jim Mullen Charitable Foundation v. World Ability Federation, NFP*, 395 Ill. App. 3d 746, 759 (2009)), it is not clear, based on the record before us, what personally identifiable information is present in the requested records, whether the records can be redacted in a manner to satisfy FERPA and FOIA, and whether the redacted records would be responsive to BGA's FOIA request. These are factual questions to be resolved by the circuit court. See *Nokomis Quarry Co. v. Dietl*, 333 Ill. App. 3d 480, 483 (2002).

¶ 43    We therefore find that remand to the circuit court is warranted. On remand, the circuit court should review the materials responsive to part 2 of BGA's FOIA request and redact or otherwise separate any portion of the education records that might contain information that constitutes "personally identifiable information" protected by FERPA. See *Unincorporated Operating Division of Indiana Newspapers, Inc. v. Trustees of Indiana University*, 787 N.E.2d 893, 909 (Ind. Ct. App. 2003). The Department of Education's regulations define "personally identifiable information" as follows:

"The term includes, but is not limited to—

(a) The student's name;

(b) The name of the student's parent or other family members;

(c) The address of the student or student's family;

(d) A personal identifier, such as the student's social security number, student number, or biometric record;

(e) Other indirect identifiers, such as the student's date of birth, place of birth, and mother's maiden name;

(f) Other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; or

(g) Information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates." 34 C.F.R. § 99.3 (2011).

Through this redaction, BGA would have access to the information it seeks pursuant to FOIA—albeit limited by redaction—and City Colleges would protect the privacy of student information in accordance with FERPA. *Unincorporated Operating*, 787 N.E.2d at 909. In making these redactions, the circuit court must make factual determinations regarding whether the redactions are sufficient to satisfy the regulations. "We nonetheless emphasize that *any* information which could lead to the identity of former or present students of [City Colleges] must be redacted. Whether or not this limits the intelligibility of the documents, this is what is required by [FOIA] and FERPA." (Emphasis in original.) *Id.*

¶ 44                                    III. CONCLUSION

¶ 45    For the reasons stated, we reverse the judgment of the circuit court granting summary judgment in favor of BGA on part 2 of its FOIA request and remand to the circuit court to conduct an *in camera* inspection of the records and oversee the redactions to remove any personally identifiable information from the requested education records.

¶ 46    Reversed and remanded with directions.

*Better Government Ass'n v. City Colleges of Chicago*, **2024 IL App (1st) 221414**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CH-09964; the Hon. Eve M. Reilly, Judge, presiding. |
| **Attorneys for Appellant:** | LaKeisha C. Marsh, Joel D. Bertocchi, and Jamel A.R. Greer, of Akerman LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Matthew Topic, Josh Loevy, Merrick Wayne, and Shelley Geiszler, of Loevy & Loevy, of Chicago, for appellee. |